**Anthony P. MARINACCIO and Susan M. Gigante, on Behalf of Themselves and all Others Similarly Situated, Plaintiffs,**

**v.**

**BARNETT BANKS, INC. and Barnett Mortgage Company d/b/a Loan America, Defendants.**

**No. 97 CIV. 0762(CLB).**

United States District Court, S.D. New York.

Oct. 23, 1997.

Jonathan K. Levine, Joel B. Strauss, Frederic S. Fox, Kaplan, Kilsheimer & Fox, L.L.P., New York City, for Plaintiffs.

Bruce Allensworth, Eva Siko, Irene Freidel, Kirkpatrick & Lockhart, New York City, for Defendants.

## MEMORANDUM & ORDER

BRIEANT, District Judge.

This case arises out of a residential mortgage loan funded by Barnett Mortgage Company ("Barnett"), a nationwide residential mortgage wholesaler, and arranged by Embassy Investment Mortgage Company ("Embassy"), a residential mortgage broker. Plaintiffs Anthony P. Marinaccio and Susan M. Gigante, seek to recover on behalf of themselves and others similarly situated, for Barnett's alleged violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA") in connection with Barnett's nationwide residential mortgage closings.

Presently before this Court is plaintiffs' motion for class certification, pursuant to Fed.R.Civ.P. 23(a) and (b). Plaintiffs seek certification for all persons who:

(a) received a "federally related mortgage loan" [as defined under 12 U.S.C. § 2602(1) ] from Barnett between February 6, 1996 through and including February 5, 1997;

(b) and directly paid mortgage brokers for services performed in connection with such federally related mortgage loan transactions; and

(c) where Barnett made payment to a mortgage broker.

*See* Notice of Motion for Class Action certification, at 1–2. For the reasons set forth below, plaintiffs' motion for class certification is denied.

### *Background*

In September 1996, plaintiffs met with an agent of Embassy, who arranged for plaintiffs to obtain a "federally related mortgage loan" from Barnett for the purchase of a home in White Plains, New York. At the closing of that loan, plaintiffs paid Embassy a loan origination fee of 1.25 points or $2,587.50. In addition, Barnett presented to plaintiffs a U.S. Department of Housing and Urban Development ("HUD") Settlement Statement, which disclosed that Embassy would receive from Barnett a "yield spread premium" in the amount of $5,433.75. Plaintiffs contend that this "yield spread premium" (hereinafter a "YSP") is essentially a "kickback" or "split charge" paid by Barnett to Embassy for referring mortgage business to Barnett at a higher than market rate. This practice, according to plaintiffs, violates RESPA section 8, codified at 12 U.S.C. § 2607, which provides as follows:

**(a) Business referrals**

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person. . . .

**(b) Splitting Charges**

No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

Defendants deny plaintiffs allegations, and point principally to the limitations imposed on sections 8(a) and 8(b) by RESPA section 8(c), which provides in pertinent part:

Nothing in this section shall be construed as prohibiting . . . (2) the payment to any person of a bona fide salary or compensation or other payment for goods or facilities or for services actually performed.

*See* 12 U.S.C. § 2607(c). Defendants also rely on HUD Regulation X, 24 C.F.R. § 3500.14(g)(2) which provides in pertinent part:

If the payment of the thing of value bears no reasonable relationship to the market value of the goods or services provided, then the excess is not for services or goods actually performed or provided. These facts may be used as evidence of a viola-

tion of section 8 and may serve as a basis for a RESPA investigation. High prices standing alone are not proof of a RESPA violation. The value of a referral (i.e., the value of any additional business obtained thereby) is not to be taken into account in determining whether the payment exceeds the reasonable value of such goods, facilities or services. The fact that the transfer of the thing of value does not result in an increase in any charge made by the persons giving the thing of value is irrelevant in determining whether the act is prohibited.

Relying on these provisions, defendants assert that the disputed YSP payment in this case was a "market-driven" fee which was paid as compensation to Embassy, and that the fee bears a reasonable relationship to the services performed by Embassy in arranging plaintiffs' mortgage. *See* Def. Mem. at 5–7.

### Discussion

### A. Class Certification Standards

To obtain certification of the proposed class, plaintiffs bear the burden of demonstrating that:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In this case, plaintiffs must also show, "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). It is this 'predominance' criterion which presents the major obstacle to plaintiffs' motion for class certification.

1. *Standards for assessing 'predominance'*

■ As a threshold matter we note that while it is true that a trial court may not

properly reach the merits of a claim when determining whether class certification is appropriate, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974), this principle should not be invoked to limit artificially the required "rigorous analysis" of the factors necessary to the determination of whether plaintiffs have met their burden of establishing each of Rule 23's class action requirements. *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir.1990), *cert. denied*, 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991) quoting *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372–73, 72 L.Ed.2d 740 (1982).

■ As the Supreme Court has noted, "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising plaintiffs cause of action." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). Indeed, because the evidence relevant to the predominance requirement in this case is intertwined with the merits, we must take a "close look" at the questions of law and fact involved in plaintiffs' RESPA claim to determine whether those questions are common to all class members and predominate over questions relative only to individuals. *See Amchem Products, Inc. v. Windsor*, —— U.S ——, ——, 117 S.Ct. 2231, 2246, 138 L.Ed.2d 689 (1997) (noting that Rule 23's predominance criterion necessitates a "close look" at inter alia the "difficulties likely to be encountered in the management of a class action." (internal citations omitted)).

2. *Predominance and plaintiffs' RESPA claims*

To prevail on their claims under RESPA sections 8(a) and (b), plaintiffs must show that under section 8(c), the challenged YSPs regularly paid by Barnett to mortgage brokers are for something other than for "services actually performed." 12 U.S.C. § 2607. Defendants contend and the Court agrees that payments of YSPs to brokers by lenders are not *per se* violations of RESPA. Instead,

to determine whether the YSP payments in this case violated RESPA, the trier of fact would need to examine what services were actually performed in exchange for each of the premiums paid in each of the approximately 6,700 separate loan transactions which would be encompassed by the proposed class. *See* Def. Mem. at 33.

Because 24 C.F.R. § 3500.14(g)(2) calls for a review of whether the payment in each of these transactions bears a "reasonable relationship to the market value of the ... services provided," class treatment of this case would "necessitate judicial investigation ... of such factors as geographic market variations, the size and type of the loan, the amount of services required for the particular transaction and the mortgage broker's individual cost and expense structure." Def. Mem. at 32. In short, defendants contend and the Court agrees that plaintiffs have failed to establish that the questions of law or fact common to the members of the proposed class predominate over the questions affecting only individual members as required by Rule 23(b)(3).

Plaintiffs respond to defendants' reasoning by claiming that the predominant issue in his case is whether defendants had a specific regular business practice of paying mortgage brokers for the sole purpose of obtaining mortgage business at higher than market rates. In sum, plaintiffs' contend that "the overriding issue [in this case] is defendants' regular business practice and course of illegal conduct, not whether any one particular payment by defendants was proper." *See* Plaintiffs Mem. at 5–6. Although Plaintiffs concede, as they must, that not every payment of a YSP is a *per se* violation of RESPA section 8, plaintiffs assert that every potential class member in this case was treated identically by the defendants in that defendants' payments to mortgage brokers were never "for services actually performed" as required by RESPA section 8(c). Thus, according to plaintiffs, defendants' YSP payments always violated sections 8(a) and 8(b).

■ Having carefully considered these competing contentions, this Court concludes that defendants are correct in asserting that the questions of law or fact common to the

members of the proposed class do not predominate over the questions affecting the individual members. Because payment of a YSP or other fee to a mortgage broker is not a *per se* violation of RESPA section 8, certification in this case would require analysis of each of the 6,700 transactions encompassed by the proposed class to determine whether any of the challenged YSP payments were not reasonably related to the value of the "services actually performed." See 12 U.S.C. § 2607(c). The individual factual questions associated with such an analysis undeniably would predominate over any questions common to the class and render administration of such a class action impractical.

Plaintiffs' response to this reality comes in the form of two interrelated—yet discrete—semantic arguments. First, plaintiffs claim that a common issue does predominate, and refer to the Complaint's "alleg[ation] that defendants' payments to mortgage brokers ... were *never* 'for services actually performed.'" *See* Complaint at ¶¶ 19–20. This argument, while cleverly phrased, is really just another way of asserting that YSP payments, of the type made by defendants, are *per se* RESPA violations—which they clearly are not.

Second, plaintiffs argue that the predominant and "overriding issue [in this case] is defendants' regular business practice and course of illegal conduct." Plaintiffs' Mem. at 6–7. This argument is also cleverly phrased, in that it is predicated on the unspoken assumption that defendants' conduct is actually "illegal." Upon analysis this assumption is itself premised on the same unspoken assertion which underlies plaintiffs' first argument—namely, that YSP payments are *per se* violations of RESPA.

■ As plaintiffs themselves acknowledge, and as every court that has rendered a final decision on this issue has concluded, YSP payments are not *per se* violations of RESPA. *Culpepper v. Inland Mortgage Corp.*, 953 F.Supp. 367, 372 (M.D.Ala.1997) (holding that payment of a yield spread premium does not constitute a referral fee forbidden by RESPA section 8(a)); *Barbosa v. Target Mortgage Corp.*, 968 F.Supp. 1548, 1530–63

(S.D.Fla. June 24, 1997) (holding that payment of a yield spread premium does not constitute fee splitting forbidden by RESPA section 8(b)); *Badio v. Accubanc, Mortgage Co.,* C.A. No. 96–12259–RCL (D.Mass. July 2, 1997) *(sua sponte* order) (denying plaintiffs motion for partial summary judgment because "[a]s framed, the motion functionally seeks a declaration that the payment of a yield spread premium is a *per se* violation of RESPA," and concluding that such payments are not *per se* violations); *Dubose v. First Security Savings Bank,* 974 F.Supp. 1426 (M.D.Ala.1997) (holding that a material issue of fact existed as to whether yield spread premium payments were illegal under RESPA § 8); *Martinez v. Weyerhaeuser,* No. 94–1610–CIV–RYSKAIVP at 5 (S.D. Fla. June 25, 1997) (slip opinion) (noting that payment of yield spread premiums are not *per se* illegal).

Accordingly, this Court's predominance analysis does not turn on the 'all or nothing' determination that would at first blush seem to be required by the Complaint's assertion that defendants' YSP payments "were never for 'services actually performed.'" Instead, our predominance analysis is informed by the fact that any class certification would require the trier of fact to analyze the *reasonableness* of each YSP payment as it relates to the type, amount, complexity and difficulty of the services actually provided by the mortgage broker.

This Court sees no reason to depart from the rationale adopted by the overwhelming weight of case authority in this area—namely, that class action treatment is inappropriate for claims brought under section 8 of RESPA because individual factors predominate over common issues. *See Briggs v. Countrywide Funding Corp.,* CIV. 95–D–859–N at 9 (Sep. 10, 1997) (slip opinion) ("to investigate Countrywide and its brokers' liability to the some 77,056 proposed plaintiffs, the trier of fact would need to investigate the services actually performed and fees charged in each specific instance.... Such individual inquiries predominate over questions common to the class as a whole and make certification of a 23(b)(3) class in this instance inappropriate."); *Mentecki v. Saxon Mort-*

*gage, Inc.,* 1997 WL 45088 (E.D.Va.1997) ("the issue of whether a certain yield spread premium falls within § 8(c) of RESPA is unique to each member of the class and would require separate inquiry as to each plaintiff. For each class member, the court would have to determine whether the yield spread premium was legitimate compensation for goods and services ....[thus] individual issues would predominate over common questions of law and fact."); *Martinez v. Weyerhaeuser,* No. 94–1610C–CIV–RYS–KAMP at 5 (S.D. Fla. June 25, 1997) (slip opinion) ("The Court believes that if a class were certified, individual issues would quickly engulf the entire litigation. Plaintiffs attempt to certify a class would work as to the RESPA counts only if the payment of yield spread differentials were per se illegal.").

The only authority available to plaintiffs to rebut the *Briggs, Mentecki,* and *Martinez* courts' treatment of this issue, appears to be *McDermott v. Mercury Capital Services,* 1:94–cv–1524–MHS at 4–5 (N.D.Ga. July 12, 1995) (slip opinion). In that case, the court granted the motion for class certification in an action arising from challenges to yield spread premium payments because:

> Plaintiffs ... meet the requirements of Rule 23(b)(3) that the questions of law or fact common to the members of the class predominate and that class action is superior to other available methods for the fair and efficient adjudication of the controversy. The same question of law or fact exist for each plaintiffs claim, and the major questions of fact are those common to the members of the class.

Beyond this conclusory language, the *McDermott* opinion does not specify why common questions predominated in that case. Indeed, the *McDermott* opinion does not appear to have considered the certification implications raised by the 'reasonableness' inquiry called for by RESPA section 8(c). *See id. passim.* Moreover, the proposed class in *McDermott* encompassed a mere 189 transactions, all of which—according to the court—were "almost identical." *Id.* at 4. By all accounts, the proposed nationwide class in this case would be many times larger than that certified in *McDermott.* Furthermore,

although plaintiffs in this case assert that every potential class member was treated identically and harmed in the same manner by the defendants' regular practice of paying brokers for the sole purpose of obtaining mortgage business at higher than market rates, see Complaint at ¶¶ 9–20, nowhere do plaintiffs' assert that the individual transactions themselves were "almost identical" as was apparently the case in *McDermott*. Accordingly, this Court is unpersuaded by the *McDermott* decision.

Instead, this Court adopts the rationale articulated by Judge Pollack in *Sicinski v. Reliance Funding Corp.*, 82 F.R.D. 730 (S.D.N.Y.1979). In *Sicinski*, the plaintiff claimed: (1) that a title company had violated section 8(a) of RESPA by paying its examining counsel, Feeney, 70% of its title insurance premium, allegedly as a "kickback" for the referral of the title work; and (2) that a mortgage company, Reliance, had violated section 8(b) of RESPA by "splitting" its own counsel's fees with the examining counsel. 82 F.R.D. at 731–32.

In rejecting plaintiffs arguments for class certification, Judge Pollack reasoned:

> For each individual transaction, the Court would have to ascertain what services Feeney rendered and to decide whether Title Guarantee's payment was reasonably related to those services [under RESPA § 8(a)]. In this inquiry, common questions certainly would not predominate. Like section 8(a), section 8(b) is qualified by the "reasonable relationship" test of 8(c) and 24 C.F.R. § 3500.14. If this case were to proceed as a class action, the Court would have to ascertain what services Feeney and the Russo firm each rendered in 303 separate transactions and to decide whether the fees received by each were reasonably related to their work.

*Id.* at 733 Thus, Judge Pollack concluded that "in none of [plaintiff's RESPA] claims do common questions predominate." *Id.* at 732.

We find this reasoning to be persuasive. It is especially so within the context of the instant inquiry. As noted above, the proposed class in this case apparently would encompass 6,700 transactions—a number which dwarfs the 303 transactions which confronted Judge Pollack in *Sicinski*. This Court believes that certification of such a class in this case would be inappropriate because individual issues would quickly engulf the entire litigation—making class treatment an inferior method of adjudicating the controversy.

■ As a final matter we note that in reaching this conclusion, this Court has carefully adhered to the principle that class action determinations are to be based solely on the allegations set forth in the complaint, which are accepted as true, *see Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n. 15 (2d Cir.1978), and not on an inquiry into the merits of the plaintiffs' claims. *See Eisen*, 417 U.S. at 177–78, 94 S.Ct. at 2152–53. We note this only because in addressing the predominance requirement of Rule 23(b)(3), plaintiffs have gone to some lengths to point to their Complaint, and to phrase their arguments as conclusions on the merits (e.g., defendants' YSP payments "were never 'for services actually performed.'"). This approach appears to be a calculated attempt to re-cast what is essentially the 'predominance' analysis required by Rule 23, as the 'merits' inquiry prohibited by *Eisen* at the class certification stage. Thus, we emphasize—as we have before in other decisions on class certification—that any references to the plaintiffs' legal and factual allegations set forth above, were necessary to this Court's Rule 23 determination, and should not be misconstrued as findings of fact or conclusions of law regarding the issues raised by those allegations. *See, e.g., In re Scientific Control Corp. Securities Litigation*, 71 F.R.D. 491, 505 n. 13 (S.D.N.Y.1976).

## Conclusion

For the reasons set forth above, plaintiffs' motion for a class certification is denied.

Counsel shall attend a case management conference on November 21, 1997 at 9:30 A.M.

SO ORDERED.