**Derek DUJANOVIC, Plaintiff,**

v.

**MortgageAMERICA, INC., Defendant.**

No. CV–98–TMP–0235–S.

United States District Court,
N.D. Alabama,
Southern Division.

March 25, 1999.

**662**

Lange Clark, David R. Donaldson, Tammy McClendon Stokes Birmingham, AL, for plaintiff.

William D. Scruggs, Elbert Allen Dodd, Jr., Holly J. Hendrickson, Fort Payne, AL, for defendant.

### ORDER GRANTING MOTION FOR CLASS CERTIFICATION

PUTNAM, United States Magistrate Judge.

On February 2, 1998, the plaintiff, Derek Dujanovic, filed a class action complaint commencing this action against MortgageAmerica, Inc. ("MortgageAmerica"), a company in the business of extending mortgage credit. A motion for class certification was subsequently filed and the Court conducted a hearing on plaintiff's request for class certification on December 11, 1998. Pursuant to a stipulation filed April 15, 1998, the parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c). The motion has been briefed and the parties have submitted affidavits, depositions, and live testimony in support of their positions on the issue of class certification.

### I. Introduction

Plaintiff requests that this court certify a nationwide class[1] of residential mortgage borrowers whose mortgage brokers were paid yield spread premiums by defendant in addition to the origination fees paid by the borrowers themselves. More specifically, plaintiff asks for certification of a class defined as:

> All persons residing in the United States and its territories who, during the period one year prior to the date of the filing of this Complaint forward, obtained a federally-related mortgage loan that was table-funded by the defendant in which the borrower(s)' HUD–1 reflects: (1) that the mortgage broker was paid a fee for its services from the "Borrowers' Funds" and/or the "Seller's Funds" at closing and (2) that MortgageAmerica paid the mortgage broker a fee outside of closing ("POC").

Mr. Dujanovic, the plaintiff, is a resident of Shelby County, Alabama. MortgageAmerica, the defendant, is a lender providing mortgage loans in the southeastern United States, with its principal place of business in Birmingham, Alabama. This case arose from Mr. Dujanovic's purchase of a home with a mortgage loan obtained from MortgageAmerica. Mr. Dujanovic's mortgage transaction was handled through Jim Ceyte, a mortgage broker employed by Mortgage Resources, Inc. As a mortgage broker, Mr. Ceyte functioned as a person who brings the prospective borrower and lender together, but who is neither employed by, nor working exclusively for, the lender. As a mortgage broker, Mr. Ceyte is able to take a prospective borrower and "shop" his loan among several prospective lenders with whom he has a contractual relationship.

Mr. Ceyte presented Mr. Dujanovic's loan application to two lenders. One rejected it, but MortgageAmerica accepted the application. Mr. Dujanovic's closing took place on November 12, 1997. At closing, Mr. Dujanovic paid Mortgage Resources a one percent "loan origination fee" of $878.75. In addition, MortgageAmerica paid Mortgage Resources a "yield spread premium" of $659.07. Other, smaller fees were paid to the broker and/or the lender to cover such actual expenses as underwriting services, courier charges, and others.

1. The reference to a "nationwide" class is somewhat misleading. As a practical matter, virtually all mortgage lending made by defendant occurred in Alabama, Georgia, and Florida; thus, almost all class members will be located in those three states.

The practice of paying yield spread premiums to mortgage brokers is widespread in the industry. As a general rule, lenders provide brokers with a daily rate sheet that sets forth the daily interest rates at which the lender will provide funding for loans without requiring the borrower to pay "discount points", an up-front payment of interest. The rate at which no discount points would be required to make the loan is considered "par". A loan at a lower interest rate is considered "below par" and requires the additional payment of the points. A loan at a higher rate is called an "above-par" loan. If a broker presents to the lender an above-par loan, the broker is paid a yield spread premium in an amount that increases in relation to the difference between the above-par rate and the par rate. In simple terms, if a broker presents a loan at a higher than par rate, one on which the lender receives more profit than at the par rate, the broker gets a bonus payment related to that rate.

The interest rate on Mr. Dujanovic's mortgage loan from MortgageAmerica was above par and came from just such a rate sheet delivered to Mortgage Resources. Consequently, under its contractual relationship, the broker was entitled to the payment of the yield spread premium from MortgageAmerica. The president of MortgageAmerica testified that a yield spread premium is "an amount of money that is the function of the difference in the price of the mortgage originated versus the price that the lender is willing to pay for it." Depo. of J. Johnson, p. 17. He further testified that the yield spread premium can be discerned from reading the daily rate sheets provided by MortgageAmerica to the broker, and is determined without any reference to the amount the borrower pays the broker as an origination fee. *Id.* at 43–44.

The plaintiff contests the propriety of MortgageAmerica's practice of paying a yield spread premium to the broker in those instances in which the borrower already has paid the broker for his services in the form of an origination fee. Plaintiff asserts that the yield spread premium was paid "without regard to the work performed by the brokers and without regard to the amount of compensation paid by the class members to the brokers in the form of origination fees or other fees". (Complaint, ¶ 13). Plaintiff contends that under those circumstances the yield spread premium constitutes a referral fee violative of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 (1989), *et seq.* ("RESPA").[2]

Specifically, plaintiff contends that the yield spread premium paid to his broker by MortgageAmerica violates the following provision:

**(a) Business referrals**

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

**(b) Splitting charges**

No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607. MortgageAmerica responds that the prohibitions of subsections (a) and (b) are tempered by the language of subsection (c), which states:

**(c) Fees, salaries, compensation, or other payments**

Nothing in this section shall be construed as prohibiting ... the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed.

12 U.S.C. § 2607(c). In the alternative, plaintiff contends that the yield spread premium is duplicative of the fees paid by the

---

**2.** The parties do not dispute that the loan at issue in this case is a federally related mortgage loan

that falls within RESPA's reach.

borrowers, and thereby violates 24 C.F.R. § 3500.14(c).[3]

The defendant argues that the payment of the yield spread premium to Dujanovic's broker was compensation for goods and services rendered in connection with the transaction, and therefore is not prohibited by RESPA. The defendant further claims that the payment of the yield spread premium is not illegal so long as the amount paid is "reasonable." This contention is based on HUD's Regulation X, codified as 24 C.F.R. § 3500.14(g)(2) (1998),[4] which states:

> If the payment of a thing of value bears no reasonable relationship to the market value for the goods or services provided, then the excess is not for services or goods actually performed or provided .... High prices standing alone are not proof of a RESPA violation.

Plaintiff seeks certification of a class of similarly situated borrowers whose HUD–1 statements indicate both that (1) the borrower paid an origination fee and (2) the lender paid the broker a yield spread premium. Defendant correctly points out that many other courts have been asked to certify a class of borrowers in cases attacking the propriety of the payment of a yield spread premium, and that most have declined. The plaintiff asserts that because the Eleventh Circuit Court of Appeals found payment of a yield spread premium to violate RESPA in *Culpepper v. Inland Mortgage Corp.*, 132 F.3d 692 (11th Cir.1998), the yield spread premiums paid by defendant in this case also violate RESPA and should be litigated on a class basis.

**3.** Section 3500.14(c) provides, in pertinent part, that "[a] charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee and violates this section."

**4.** An evaluation under this regulation is commonly referred to as a "reasonableness test" or a "market value test".

**5.** While the Eleventh Circuit is the only circuit court to have resolved this issue, district courts have likewise opined that payment of a yield spread premium is not, by its very nature, compensation for services. *Mentecki v. Saxon Mortgage Inc.*, 1997 WL 45088, at *4 (E.D.Va. Jan. 10,

The issue, however, is not as clear-cut as either party purports. To reach the proper conclusion, this court must examine both the substantive law concerning the RESPA statute at issue, and the procedural requirements governing class actions.

### II. Culpepper v. Inland Mortgage

The Eleventh Circuit Court of Appeals is the only circuit court that has considered the propriety of the payment of a yield spread premium to a mortgage broker. *Culpepper v. Inland Mortgage Corp.*, 132 F.3d 692 (11th Cir.1998) (hereinafter "*Culpepper I*"); *Culpepper v. Inland Mortgage Corp.*, 144 F.3d 717 (11th Cir.1998) (hereinafter "*Culpepper II*"). In *Culpepper I*, the court determined whether, as a matter of law, the yield spread premium paid in connection with the Culpeppers' mortgage was a payment for goods or services or was a kickback violative of RESPA. *Culpepper*, 132 F.3d at 694.[5]

The plaintiffs in *Culpepper I* obtained a mortgage loan from Inland at an above-par rate. The borrowers paid an origination fee to the mortgage broker; in addition, the broker received a yield spread premium from the lender. *Id.* The court determined that "Inland's formula for determining the size of the yield spread premium was not tied to services, but to the size and interest rate of the Culpeppers' loan." *Id.* The court also noted that the services provided by the broker "were the same irrespective of the interest rate." *Id.* The court further relied upon the fact that the broker did not fund the loan; the defendant lender provided the funds. *Id.*[6]

The court of appeals set out the elements of plaintiffs' case by stating that RESPA's

1997) (denying motion to dismiss and stating that the court "is unable to see what service is provided to the consumer, ... unless it is the provision of a bad deal"); *see also, DeLeon v. Beneficial Constr. Co.*, 998 F.Supp. 859 (N.D.Ill.1998) (denying motion to dismiss RESPA claims).

**6.** This fact is important in light of the analysis of whether the fee is paid for "goods or facilities", suggesting that when the broker is, in essence, also the lender, the payment might be a payment for the funds themselves, which could be construed as "goods" within the meaning of 12 U.S.C. § 2607(c).

prohibition against referral fees or kickbacks was violated when (1) a payment of a thing of value (2) is made pursuant to an agreement to refer settlement business and (3) a referral actually occurs. *Id.* at 695–96. The court first determined that the lender gave value to the broker in the form of a yield spread premium, made pursuant to the broker's contractual agreement with the lender, and that the referral occurred when the broker chose to present the Culpeppers' loan application to Inland at an above-par rate instead of to other available lenders. *Id.* at 696.

The Eleventh Circuit Court of Appeals next determined that the yield spread premium was not a payment for goods because the lender, not the broker, owned the loan from the outset. *Id.* Since the lender "table funded" the loan, the broker never owned it as an asset that could be sold to the lender subsequent to the closing. Finally, the court determined that the yield spread premium was not a payment for services because: (1) the plaintiffs compensated the broker by paying a loan origination fee, and (2) the lender admitted that the yield spread premium was paid, at least in part, for the above-par rate of the loan. *Id.* In addition, although almost as an afterthought, the court refuted the notion that the yield spread premium was payment to compensate the broker for services provided to the lender, not the borrower. The Eleventh Circuit stated:

> It is undisputed that the payment of the yield spread premium was not tied to the quantity or quality of the services that [the broker] provided. Rather, the sole determinant of whether a yield spread premium would be paid was the interest rate on the loan.

*Id.* at 697. The court reasoned that where the broker expends the same amount of time and effort whether a loan is at par, above par or below par, it cannot be said that the yield spread premium compensates the broker for a service, aside from the illegal service of referring real-estate settlement business. *Id.*

Perhaps most important to the instant case, once the court of appeals reached the conclusion that the yield spread premium was not related to the provision of goods or services, it recognized that the "market value test" was inapplicable. *Id.* Consequently, the court reversed the district court's summary judgment for the defendant and vacated the court's denial of the motion for class certification and dismissal of class claims. *Id.*

On petition for rehearing and suggestion of rehearing en banc, the Eleventh Circuit Court of Appeals clarified its earlier ruling by explaining that *Culpepper I* did not bar yield spread premiums per se and did not summarily adjudicate the case in favor of the plaintiff. *Culpepper II*, 144 F.3d 717, 718–19 (11th Cir.1998). The court emphasized that the defendant lender, seeking summary judgment, had failed to show any factual link between the payment of the yield spread premium and any goods or services furnished by the broker. Absent such a link, it could not be said that the yield spread premium was compensation for goods or services, leaving the inevitable conclusion that it was an illegal referral fee.

In this case, plaintiff's claims are virtually identical to those of the Culpeppers. The defendant mortgage lender, not the broker, funded the loan, and the yield spread premium paid to the broker was determined by the interest rate of the loan. The evidence shows that the broker's services would not have varied had the loan been at or below par value. While this court does not consider the merits of plaintiff's claims at this juncture, the evidence already before this court indicates that it is at least possible that plaintiff can prove that the defendant violated RESPA in all the transactions involving class members without necessitating any examination of the services rendered by each broker in each instance.[7] If plaintiff's evi-

---

7. While MortgageAmerica offers the affidavit of its purported expert witness as evidence that the yield spread premium paid in the Dujanovic transaction was paid for services rendered, the affiant admits that "a broker does not provide the same services in connection with each loan". This fails to enlighten the court as to why, then, the yield spread premium is the same (percentage-wise) with every loan offered at a particular above-par interest rate, and why no yield spread premium is available to compensate the broker for those same services when rendered in connection with a loan at or below the par rate.

dence, in fact, establishes that MortgageAmerica always pays a yield spread premium for above-par loans, never pays a premium for par or below-par loans, and that there is no significant difference in the brokerage services supplied in par and below-par loans compared to above-par loans, a jury could conclude that the yield spread premium has nothing to do with goods and services supplied by the broker, but everything to do with the rate (and profitability) of the mortgage.

Given the substantive viability of plaintiff's claims, this court must next apply the rigorous analysis required by the applicable Federal Rules of Civil Procedure in order to determine whether plaintiff's motion for class certification is due to be granted.

### III. The Requirements of Rule 23

■ The determination of the issue of class certification must be made "as soon as practicable after the commencement of an action." Fed.R.Civ.Pro. 23(c)(1). Certification of a class "may be conditional, and may be altered or amended" at any time before a decision is reached on the merits. Id. The court has broad discretion in determining whether the prerequisites of Rule 23 are met. Califano v. Yamasaki, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). In determining whether this case should be given class treatment, the court looks not to whether plaintiff will prevail, but rather to the strict requirements of Federal Rule of Civil Procedure 23.[8] The merits of plaintiff's claim are not now before this court, except to the extent that they impact upon the issue of whether the case is amenable to class certification. See, e.g., Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177–178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); Washington v. Brown & Williamson Tobacco Corp., 959 F.2d 1566, 1570 n. 11 (11th Cir.1992). The Supreme Court has recognized, however, that it is inevitable that a motion to certify will involve matters "enmeshed in the factual and legal issues comprising plaintiff's cause of action." Coopers & Lybrand v. Livesay, 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (quoting Mercantile Nat'l Bank v. Langdeau, 371 U.S. 555, 558, 83 S.Ct. 520, 522, 9 L.Ed.2d 523 (1963)).

### A. Requirements of Rule 23(a).

■ The plaintiff has the burden of demonstrating the essential elements of a Rule 23 class action, as set forth in Federal Rule of Civil Procedure 23(a). See General Tel. Co. v. Falcon, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). These four requisites present the first hurdle that Mr. Dujanovic, as proponent of class treatment, must overcome.

#### 1. Numerosity.

Rule 23(a)(1) requires that the class be so numerous that joinder of all members would be impracticable. Plaintiff has alleged that the class members number more than a thousand. Defendant admits that in 1998, it made between 1500 and 2500 mortgage loans through brokers, and that most involved payment of a yield spread premium. Defendant does not contend that the number of loans closed in 1997, during the period of time delineated in the proposed class definition, would be significantly different. Defendant further does not argue that, if the class were certified as plaintiff proposes, the numerosity requirement would not be met.

■ As a general rule, classes of more than 40 members are deemed to satisfy the numerosity requirement. Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir.1986), cert. denied, 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986). Furthermore, this court may "make common sense assumptions" to support a finding of numerosity. Evans v. United States Pipe & Foundry, 696 F.2d 925, 930 (11th Cir.1983). Consequently, this court finds that the class is sufficiently numerous as to make joinder of all members impracticable.

---

**8.** Plaintiff's motion does not specify under which subsection of Rule 23(b) he brings this motion. Plaintiff's brief states that the plaintiff seeks an order entered pursuant to Rule 23(b)(3). For this reason, and because the damages prayed for are primarily monetary, and also because plaintiff makes no showing relative to subsection (b)(2), this court treats plaintiff's motion as one brought pursuant to Rule 23(b)(3) seeking certification of an "opt-out" class.

### 2. Commonality.

Rule 23(a)(2) requires that the class members share common questions of law or fact. Plaintiff alleges that all class members share the fact that they paid an origination fee to their brokers and that their brokers received an additional yield spread premium from the lender. Class members also would seek to resolve one central question of law: whether the practice of providing the yield spread premium in addition to the origination fee for only above-par loans violates RESPA.

Commonality may exist where the party opposing the class has engaged in a course of conduct that affects all class members and gives rise to the plaintiff's claims. *See Rodriguez v. Berrybrook Farms, Inc.,* 672 F.Supp. 1009 (W.D.Mich.1987). It also is well established that the commonality requirement of Rule 23(a) is not high; it is generally met when there is either a common question of fact, or of law. *See Cottrell v. Virginia Elec. & Power Co.,* 62 F.R.D. 516 (D.Va.1974). Commonality also may be established by a showing that the action of all members arises from a common nucleus of operative facts. *Thompson v. Midwest Found. Ind. Physicians Assoc.,* 117 F.R.D. 108, 112 (S.D.Ohio 1987).

Plaintiff has shown that the members of the putative class have been affected commonly by MortgageAmerica's course of conduct in providing brokers with payments via the yield spread premium. Plaintiff also has shown that the claims of all class members arise from the same nucleus of operative facts: the closing of a federally related residential loan in which the broker received both an origination fee from the borrower and a yield spread premium from the lender. Consequently, plaintiff has met the threshold requirement of commonality.

### 3. Typicality.

Rule 23(a)(3) requires the proponent of the class to show that the claims or defenses of the representative parties are typical of the claims or defenses of the class. Plaintiff has alleged that all class members have been injured by the defendant's practice of paying an allegedly impermissible referral fee or kickback to brokers, and that all members are thereby entitled to recover damages based upon the defendant's conduct.

The typicality requirement of Rule 23 often is considered to require no more than that there exist no antagonism between the claims of the class representative and the other members of the class. *See American Fin. Sys. Inc. v. Harlow,* 65 F.R.D. 94 (D.C.Md.1974). Like the commonality requirement, it may be satisfied even though there may exist factual differences between the class members and the class representative. *Appleyard v. Wallace,* 754 F.2d 955, 958 (11th Cir.1985).

Mr. Dujanovic seeks to have MortgageAmerica's practice of paying a yield spread premium held to be a violation of RESPA. He further seeks to force MortgageAmerica to pay treble damages to borrowers who were injured by the practice.[9] Pleadings before this court indicate that the claims of the class representative are typical of, if not identical to, the claims of the class members.[10] The defendant does not offer any evidence that Mr. Dujanovic's claims are in any way antagonistic to the class members' claims, and this court sees none. Consequently, this court finds that plaintiff has met the typicality requirement of Rule 23(a)(3).

### 4. Adequacy.

Rule 23(a)(4) requires that the named plaintiff will fairly and adequately protect the interests of the class. This re-

---

**9.** Treble damages, plus court costs and reasonable attorneys fees are penalties for RESPA violations set forth in 12 U.S.C. § 2607(d)(2) and (5).

**10.** MortgageAmerica asserts that Mr. Dujanovic's claims are not typical because the services provided by brokers vary from loan to loan, and because the borrowers vary in income and sophistication. The court finds these differences inconsequential, as the claims themselves relate to conduct of the defendant that is virtually identical in all the transactions. Defendant's conduct appears to consist of paying a yield spread premium only to brokers who refer above-par loans, regardless of the services provided or the sophistication of the borrower.

quirement usually takes the form of an inquiry into whether the class counsel is capable of handling the litigation, and whether the class representative will prosecute his claims for the benefit of both himself and the class members. *See Griffin v. Carlin,* 755 F.2d 1516, 1533 (11th Cir.1985). The defendant bears the burden of demonstrating the inadequacy of the counsel or the representative. *Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir. 1982), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982).

Class counsel have pursued vigorously other actions involving RESPA regulations, and have experience in class actions. The defendant does not dispute the adequacy of class counsel, and this court has no reason to question the ability of plaintiff's attorneys to represent well the interests of the class.

 The defendant asserts that Mr. Dujanovic is not an adequate class representative because he does not have sufficient knowledge of his claims. Specifically, MortgageAmerica states that the plaintiff "thinks the claims arise from [the broker's act of] increasing his interest rate". Def.'s Brief at p. 24. While this court agrees that the plaintiff may be unaware of the specifics of RESPA's prohibitions, the court finds that Mr. Dujanovic's assessment of the alleged wrongful conduct is essentially correct. The reason Congress enacted RESPA to prohibit referral fees, fee splitting, kickbacks, and duplicative fees was because Congress recognized that such charges effectively increased the interest rates that borrowers would be required to pay on residential loans. 12 U.S.C. § 2601(a). In any event, lack of specific knowledge about the claims generally is not grounds for denying certification where the representative's counsel is capable of handling the litigation. *See Grace v. Perception Tech. Corp.,* 128 F.R.D. 165 (D.Mass.

1989); *Klein v. A.G. Becker Paribas Inc.,* 109 F.R.D. 646 (S.D.N.Y.1986).

The plaintiff has testified that he is willing to take on the duties required of a class representative.[11] For these reasons, this court determines that both prongs of the adequacy requirement have been met.

### B. Requirements of Rule 23(b)(3).

A class action may be maintained pursuant to the Federal Rules of Civil Procedure only where all of the prerequisites of Rule 23(a) are met and at least one of the requirements of Rule 23(b) also is met. Rule 23(b)(3) requires that the court find that the questions of law and fact common to the class members will predominate over individual questions of law and fact, and that the class action is the superior method of adjudicating the controversy. These requirements are designed to ensure that certification is granted only where class treatment would promote judicial economy without compromising procedural fairness. *Amchem Products Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

### 1. Predominance.

 The Rule 23(b)(3) predominance requirement calls for an inquiry into whether the issues common to the class predominate over the individual issues relative to the respective class members. The requirement does not set forth any distinct test for measuring the quantity or quality of the issues sufficient to meet the standard of predominance. *See* 7A Charles Wright, Arthur Miller & Mary Kane, *Federal Practice & Procedure,* § 1778 at 526 (1986). It is clear, however, that the predominance requirement sets a standard higher than that sufficient to meet the commonality element of Rule 23(a). *Id.*

11. Defendant further argues that plaintiff has not offered evidence that he is financially capable of pursuing the claims as a class action. Mr. Dujanovic is not required to produce evidence relating to his financial capacity. He has stated that he understands and accepts his financial obligations, although he admits that he doesn't know how much financial contribution will be required. The amount and extent of the plaintiff's finances are not determinative of his adequacy as a class representative. *See, e.g., Sanderson v. Winner,* 507 F.2d 477 (10th Cir.1974), *cert. denied,* 421 U.S. 914, 95 S.Ct. 1573, 43 L.Ed.2d 780 (1975). To refuse to certify a class because the plaintiff is not wealthy enough to bear the expenses of the litigation would defeat one of the purposes of the class action device. *See Sayre v. Abraham Lincoln Fed. Sav. & Loan Assn.,* 65 F.R.D. 379 (E.D.Pa.1974).

In this case, plaintiff seeks a remedy for a single claim: that a lender's payment of a yield spread premium to the referring broker violates RESPA in instances where the broker also received a loan origination fee from the borrower.[12] MortgageAmerica contends that any time a yield spread premium is challenged as violative of RESPA, an inquiry into the reasonableness of the amount paid must be conducted pursuant to the guidelines of HUD's Regulation X. Defendant argues that a "reasonableness" inquiry is mandated by the simple fact that plaintiff alleges that the yield spread premium is a prohibited referral fee.

The way this court sees it, however, the reasonableness inquiry arises only if plaintiff is unable to show that the yield spread premium is not "related" to the provision of goods or services. Stated another way, if plaintiff can prove that the yield spread premium is paid in return for the referral of an above-par loan, not as payment for any goods or services at all, the payment is illegal under the *Culpepper* interpretation of RESPA. The Act prohibits all payments made as referrals. The question whether certain payments might be regarded as reasonable payments for actual goods and services arises only if plaintiff fails in his proof that there is no link whatsoever between the payment of the yield spread premium and any goods and services provided by the broker. As *Culpepper I* taught, if there is no evidence that the payment was made to compensate for actual goods and services, there is no need to analyze whether the payment was reasonable.

Defendant's position that every loan transaction must be analyzed for reasonableness would allow lenders to pay prohibited referral fees with impunity, so long as they could later provide a laundry list of services or goods to support their claim that the payment actually was compensation for those services or goods. If the evidence suggests to a factfinder, however, that the payment has no connection whatsoever to actual goods and services rendered by the broker, it is not necessary to determine whether the payment was reasonable. Any payment from a lender to a broker is deemed a referral fee unless, in fact, it is actual and reasonable compensation.

The express purpose of the legislation reveals that Congress did not intend to prevent brokers from receiving payment; but rather to protect borrowers from brokers who are motivated to market loans at interest rates higher than the best par rate available. This suggests that the fee must be judged from the perspective of when and why it is paid, and not, in retrospect, for what the fee could be said to compensate. Congress clearly stated that RESPA was designed to protect consumers from "unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a). One of the "abusive practices" that Congress expressly prohibited through RESPA was "kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(b)(2). Congress could hardly have been more explicit in indicating that lenders may not make payments to brokers that compensate the broker for referral of a loan·to that lender. That is the conduct plaintiff alleges—that the yield spread premium is paid as a referral fee, not to compensate the broker for actual goods and services—and that issue is certain to predominate ˌthe litigation that ensues.

A similar motion to certify a class was debated in the Middle District of Alabama last year. In *Taylor v. Flagstar Bank*, 181 F.R.D. 509 (M.D.Ala.1998), the court declined to certify the plaintiff class based on the same argument offered by MortgageAmerica in this case.[13] The court stated that "individ-

---

12. Plaintiff does not allege fraud or suppression, which might involve an overwhelming inquiry into the details of each transaction and each broker's operations.

13. The Middle District addressed a similar motion for class certification in 1997. In *Dubose v. First Security Savings Bank*, 183 F.R.D. 583 (M.D.Ala.1997), the court declined to certify a nationwide class of borrowers, alleging that the lender violated RESPA's prohibition against referral fees. The court denied certification, at least in part because plaintiff included state law fraud claims that would involve varying standards with regard to reliance under different state laws, and because plaintiff sought punitive damages on behalf of the class, the assessment of which would require the application of the differ-

ualized findings" would be required in order to determine whether the yield spread premium was illegal because the HUD–1 form does not ask for, or include, whether goods or services were provided to justify the payment of the yield spread premium. While this court agrees that the HUD statement does not provide such information, "individualized findings" are not required when the plaintiff's method of proving his case is the method chosen by the plaintiff in this case. Here plaintiff seeks to prove that MortgageAmerica's standard practice is to pay a yield spread premium for above-par loans and to tie the amount of the premium not to the quantity or quality of any services supplied by the broker, but solely to the amount of difference between the par and above-par loan rates. Such generalized evidence could convince a factfinder that there simply is no factual connection between the payment of the yield spread premium and any goods or services whatsoever. If that is the case, there is no need to individually examine each loan transaction.

This court recognizes that other courts have declined to certify a class based on similar allegations of RESPA violations, usually on grounds that the plaintiff failed to meet the predominance requirement.[14] Those courts presupposed that the factfinder

would be required to determine the reasonableness of the fee, and did not allow for the possibility that plaintiff could avoid the need for such inquiry by showing the lack of any relationship between the yield spread premium and the provision of goods or services.[15]

Mr. Dujanovic contends that the lender, as a matter of course, was disinterested in the value of the goods or services provided by the broker when paying the yield spread premium. Rather, he claims, what motivated the payment by MortgageAmerica was the desire to reward the referral of an above-par loan. Mr. Dujanovic asserts that the lender's regular practice of paying yield spread premiums completely disregards the value of goods or services provided by the broker.[16] If Mr. Dujanovic is able this, he will have made a compelling showing that the defendant violated RESPA as against the proposed class. At that point, a reasonable juror could determine, without having to inquire into the specific goods or services provided to any individual class member in any particular transaction, that MortgageAmerica's payment of yield spread premiums violated RESPA.

This court is not persuaded that individual inquiries will be required in this case and

ent laws of every state. *Id.* at *5. *See also Briggs v. Countrywide Funding Corp.*, 183 F.R.D. 576 (M.D.Ala.1997) (denying certification where plaintiff sought class treatment for both RESPA and state law fraud claims).

**14.** *See Conomos v. Chase Manhattan Corp.*, 1998 WL 118154 (S.D.N.Y. March 17, 1998) (holding that the plaintiffs could not show that the yield spread premium was not for services without an analysis of which services were provided); *Hinton v. First American Mortgage*, 1998 WL 111668 (N.D.Ill. March 4, 1998) (in which the plaintiffs apparently conceded that the court would have to determine factual issues concerning the services actually provided and the reasonableness of the fees); *Marinaccio v. Barnett Banks, Inc.*, 176 F.R.D. 104 (S.D.N.Y.1997) (finding "no reason to depart from the rationale" of the other courts that denied class treatment for RESPA claims); *Moniz v. Crossland Mortgage Corp.*, 175 F.R.D. 1 (D.Mass.1997) (where class certification was denied after the court had determined on summary judgment that a question of fact existed as to whether the broker received a reasonable amount of compensation in each transaction).

**15.** Many of the cases denying certification rely upon the reasoning in *Sicinski v. Reliance*

*Funding Corp.*, 82 F.R.D. 730 (S.D.N.Y.1979). In that case, however, the plaintiff's class claims arose under the Truth in Lending Act, 15 U.S.C. § 2601 *et seq.*, and RESPA. While plaintiff alleged a prohibited kickback was paid, the payment was not a yield spread premium. Furthermore, the court's reasons for denying certification included doubts about the adequacy of the plaintiff and plaintiff's counsel, and concerns about defenses that might bar plaintiff's claims but not other class members's claims. For these reasons, this court does not find that the *Sicinski* line of cases compels the conclusion that certification would be inappropriate under the facts of this case.

**16.** Other courts have failed to distinguish between the illegal pattern and practice of a particular defendant that pays yield spread premiums, and a finding that yield spread premiums are *per se* violations of RESPA. *See Marinaccio*, 176 F.R.D. at 107 (stating that plaintiffs could not prevail unless they were able to show that yield spread premiums are per se violations of RESPA).

finds more persuasive the reasoning of courts that have determined that class certification was appropriate where plaintiff asserted, as in this case, that the yield spread premium paid to the broker by the lender did not represent payment for goods or services at all and, thereby, violated the RESPA proscription against referral fees.

For example, in *Brancheau v. Residential Mortgage and Mercantile Bank,* 182 F.R.D. 579 (D.Minn.1998), the court examined both the defendant lender's motion for summary judgment and the plaintiff's motion for class certification.[17] The plaintiffs in *Brancheau,* like Mr. Dujanovic, paid a one-percent origination fee to the broker, and the lender paid the broker an additional fee in the form of a yield spread premium. In evaluating the viability of plaintiffs' RESPA claim, the court stated that an analysis of the propriety of an alleged referral fee under § 2607 involves two steps:

> In the first step, the Court must determine whether the payment was made in exchange for "goods or facilities actually furnished or for services actually performed." 12 U.S.C. § 2607(c). If the payment was for goods or services, the HUD regulations establish a test for assessing whether the amount of the payment is so excessive that a portion of the payment should be considered an improper referral fee. 24 C.F.R. § 3500.14(g)(2).

*Brancheau,* 182 F.R.D. at 584.

In pursuing the first step of the inquiry, the court examined the definition of "goods and facilities". The court determined that the yield spread premium paid to the broker did not represent payment for tangible "goods or facilities" as would be permissible payments under the statute. *Id.* at 585. The court next evaluated whether the payment represented a permissible fee for "services actually performed". *Id.* at 585–86. As in this case, the broker represented that he had performed services for the borrower and for the lender, such as preparing loan documents, ordering appraisals, and participating in the closing. *Id.* Also, again like

this case, both the broker and the lender testified that they viewed the premium as compensation for the broker's services. *Id.* The court determined nonetheless that while the evidence could lead to a conclusion that the yield spread premium compensated the broker for its services, a factfinder also could reach the opposite conclusion, based on evidence that the amount of the yield spread premium depended solely on the interest rate of the loan and not on the quantity or quality of the broker's services. *Id.* at 586.

Having determined these answers to the first step of the analysis required by 12 U.S.C. 2607(a) and (c), the court in *Brancheau* had no need to proceed to the second step. The court stated:

> The problem with defendants' arguments is their failure to address the first step of the inquiry under subsection (c). Before assessing the reasonableness of the fee, the court must determine that the yield spread premium represents a payment for either goods or services. Defendants [sic] arguments become relevant *only if* the finder of fact concludes that the yield spread premium represented *bona fide* compensation for services.

*Id.* at 586–87 (emphasis added). The court rejected defendants' arguments that the yield spread premiums should not be deemed violative of RESPA because the payment structure may add flexibility for some consumers by making it possible for up-front costs of the loan to be absorbed into the long-term payment scheme. *Id.* at 587. The court pointedly refused to "ignore the statutory language and proceed directly to an analysis of the reasonableness of the broker's overall fee, as defendants advocate." *Id.*

Having determined that the "reasonableness" test was not always necessary in evaluating the nature of an alleged referral fee prohibited by RESPA, the court in *Brancheau* next looked to the plaintiffs' motion for class certification. The court concluded that where the "plaintiffs will use generalized evidence in [an] attempt to demonstrate" the impropriety of the yield spread premium

---

**17.** While this case has not been submitted on summary judgment, this court has been provided depositions, affidavits, live testimony, extensive briefing, and oral argument to enable it to reach the conclusions set forth herein.

payments, the predominance requirement of Rule 23(b)(3) is met. *Brancheau,* 182 F.R.D. at 590.

As in *Brancheau,* the plaintiff in the instant case asserts that the generalized proof consists of MortgageAmerica's daily rate sheets and methods for calculating the amount of the yield spread premium. This evidence could prove that the payment of the yield spread premium in all loan transactions is a referral fee, completely unrelated to compensation for goods and services.

Another district court found that certification of a class of borrowers asserting claims pursuant to RESPA was appropriate in *Mulligan v. Choice Mortgage Corp.,* 1998 WL 544431 (D.N.H. Aug. 11, 1998). In *Mulligan,* plaintiffs obtained a mortgage from a lender, using the services of a mortgage broker. The Mulligans paid a brokerage fee, along with other fees to cover the documents and processing. The lender also paid the defendant mortgage broker [18] a yield spread premium. Plaintiffs alleged that the fee constituted a prohibited referral fee. The class definition proposed by the plaintiffs in *Mulligan,* like the class definition urged by Mr. Dujanovic, included only borrowers who had paid a fee to the broker.

The court in *Mulligan* held that the rigorous standards imposed by Rule 23(a) and (b)(3) were met. *Mulligan,* 1998 WL 544431 at *4. The court recognized that the plaintiffs asserted that "as a matter of routine practice," the defendant broker never provided goods or services in exchange for the payment of the yield spread premium. *Id.* at *3.[19] In finding that the Mulligans had met the predominance element of Rule 23(b), the court stated:

> The fatal flaw in [defendant's] argument is that it fails to address plaintiffs' claim that [the defendant] violated RESPA because it failed to provide any legitimate goods or services in exchange for the [yield spread premiums] it received. If this assertion can be proved at trial through evidence common to the entire class, it will not be

necessary to conduct a case-by-case inquiry of the reasonableness of any particular [yield spread premium] as the trier of fact will already have determined that [the defendant] failed to render any compensable goods or services.

*Id.* at *6, citing *Culpepper v. Inland Mortgage Corp.,* 132 F.3d 692, 697 (11th Cir.1998).

The defendant in *Mulligan,* like defendant MortgageAmerica, argued that because yield spread premiums are not unlawful *per se,* class certification would be inappropriate. The court in *Mulligan* pointed out that "it does not necessarily follow that a RESPA claim can never be suitable for certification" where "the evidence demonstrates that plaintiffs' RESPA claims will succeed or fail predominantly because of issues common to the class as a whole." *Mulligan,* 1998 WL 544431 at *6 n. 5. This also is true in the instant case. It is certainly possible that plaintiff may not prevail on his RESPA claim, but the potential for his success rests on whether he is able to prove, as in *Mulligan,* that the yield spread premiums "were paid as referral fees by showing that the magnitude of the [yield spread premiums] varied exclusively according to the difference between the 'par' interest rate and the interest rate at which the mortgage closed, without reference to the kind or degree of services performed." *Id.,* citing *Culpepper I,* 132 F.3d at 697.

In one of the many unpublished opinions provided by the defendant in opposition to plaintiff's motion, another district court addressed the question of whether to certify claims arising from the payment of yield spread premiums to mortgage brokers. In *Hamilton v. North American Mortgage Co.,* No. 98–58–P–H (D.Maine, Oct. 5, 1998), the court conceded that "if the plaintiff can prove at trial that no services were performed by [the broker] in return for the yield spread premium ... it will not be necessary to conduct a case-by-case reasonableness inquiry for each [transaction]." *Id.* at 11. While the court in *Hamilton* denied certification,

---

**18.** *Mulligan* is different only in that the broker was sued rather than the lender, as in this case and in *Brancheau.*

**19.** The court also noted that the claims arise from the standard-form broker-fee agreements.

*Id.,* (citing *Arenson v. Whitehall Convalescent and Nursing Home, Inc.,* 164 F.R.D. 659, 664 (N.D.Ill.1996), for the proposition that "claims arising from standard documents present a classic case" for class treatment).

the court's decision rested in large part on the fact that the parties had not yet conducted any discovery and the court, therefore, had no evidence tending to show that the plaintiff might be able to establish that the yield spread premium was not paid for goods or services. In this case, discovery has been conducted and the plaintiff has made such a showing.

This court agrees with the court in *Brancheau* that the "reasonableness" inquiry becomes applicable only if the plaintiff is unable to show that the defendant's practice of paying yield spread premiums for above-par loans was not in actuality a payment for goods or services within the meaning of § 2607(c). This court further finds that the common issues with regard to the payment of yield spread premiums predominate, as they did in *Mulligan*. In essence, the central issue is how and why the defendant paid the yield spread premiums, not whether, in hindsight, sufficient services or goods were provided that would justify the price.[20]

Mr. Dujanovic has demonstrated an ability to present evidence from which a factfinder could conclude that MortgageAmerica's practice of paying yield spread premiums for above-par loans is not payment for goods or services permitted by RESPA. Mr. Dujanovic's claim could be proved through evidence common to all class members. Accordingly, this court finds that the plaintiff has met the predominance requirement.

### 2. Superiority.

■ The final requirement of Rule 23(b)(3) is that the class action be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3) The factor of superiority requires the court to examine whether the class action is the fairest, most practical and manageable method of adjudicating the class members' claims. In making such a determi-

nation, the court is to consider the following factors:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

■ While the court is always mindful of any litigant's interest in controlling his own action, that interest is not unusually compelling in this case, which is similar to other class actions that have challenged the propriety of a financial institution's charges or practices. Class actions have been found to be particularly appropriate where a large number of borrowers seek relief from a course of conduct that violates laws aimed at preventing misconduct by lenders, but where the amount of each borrower's damages may be too small to warrant individual lawsuits. *Cohen v. District of Columbia Nat'l Bank*, 59 F.R.D. 84 (D.D.C.1972). As is common in these types of lawsuits, the amount of damages for each individual class member often would be too small to justify a separate action.

There has been no indication that any other litigation on this issue against this defendant has been commenced, although there have been numerous lawsuits challenging the same practice. Consequently, treatment of this action as a class action could determine whether MortgageAmerica's practice is violative of RESPA without subjecting the defendant to duplicative lawsuits.

In this case, plaintiff's sole claim arises under federal law. The representative plain-

---

**20.** MortgageAmerica offers the affidavit of its president and chief executive officer in opposition to plaintiff's motion. It is interesting to note that, while the affiant states that brokers often are not fully compensated by the loan origination fees, and that borrowers benefit by having some of the costs absorbed into their loan through they payment of the yield spread premium, the affiant never asserts that the services actually performed are in any way related to the computation of the

yield spread premium. In other words, the affidavit attempts to justify what yield spread premiums accomplish, but fails to persuade the court that they are anything more than fees paid for the referral of a profitable piece of business. RESPA was intended to prohibit such conduct from the front end, and lenders should not be allowed to escape RESPA's proscription by finding justification for the practice on the back end.

tiff resides in this district, and the defendant's principal place of business is in this district. The defendant testified that it originates mortgages in only two other states, Georgia and Florida, which adjoin Alabama. As a result, there is no reason that any other forum would be more desirable for the prosecution of this action.

This court has further examined the manageability aspect of class treatment for the plaintiff's claims and has determined that there would be no notable difficulties in managing the class action.[21] The geographic concentration of the class members is one factor that weighs in favor of trying this case as a class action. *See Mulligan,* 1998 WL 544431 at *4.[22]

Based on an examination of the present record in this case, this court concludes that class adjudication would be superior to the alternative methods of resolving the plaintiff's claims. None of the pertinent factors set forth in Rule 23(b)(3) compel the opposite conclusion.

### IV. Conclusion

This court is not at this time determining that plaintiff will or should prevail on his RESPA claim. Rather, it simply recognizes that a reasonable juror could find that the yield spread premiums paid routinely by MortgageAmerica are illegal referral fees or kickbacks, or are impermissibly duplicative. Further, for the reasons explained above, the court finds that those issues can and should be determined on a class basis. Plaintiff's motion for class certification is due to be and is hereby GRANTED, and the court certifies the following class:

> All mortgage-loan borrowers residing in the United States and its territories who, from February 2, 1997, forward to the date of this Order, closed as borrowers a feder-

ally related mortgage loan that was table-funded by the defendant, MortgageAmerica, Inc., in which the borrower(s)' HUD-1 reflected: (1) that the mortgage broker was paid a fee for its services from the "Borrowers' Funds" at closing and (2) that MortgageAmerica paid the mortgage broker a fee outside of closing ("POC").

By separate order, the court will set a Rule 16(b) scheduling conference to discuss and settle upon an appropriate schedule for further proceedings in this action.

The Clerk is DIRECTED to serve a copy of this order upon counsel for all parties.

---

21. Because certification is, by its nature, subject to later amendment or alteration, this court recognizes that if the plaintiff fails to show that the payment of the yield spread premium is not a payment for goods or services, the court could be required to conduct individualized inquiries into each transaction. Should this case reach that point, however, the court could conduct mini-trials as to the nature of the payments, divide the class into subclasses that may share common characteristics, or choose to decertify the class.

22. Another fact that weighs in plaintiff's favor is that the remedy sought is the statutory remedy provided for by RESPA, which also could be determined without resorting to numerous individualized assessments of damages or without consulting state law requirements relating to the imposition of punitive damages.