Daniel and Emily HEIMMERMANN,
et al., Plaintiff,

v.

FIRST UNION MORTGAGE
CORPORATION,
Defendant.

No. CV–98–J–2357–NW.

United States District Court,
N.D. Alabama,
Northwestern Division.

Aug. 13, 1999.

Earl P Underwood, Jr, Underwood & Associates, Anniston, AL, C Neal Pope, Pope McGlamry Kilpatrick & Morrison, Columbus, GA, David R Donaldson, Tammy McClendon Stokes, Donaldson Guin & Slate LLC, Birmingham, AL, for plaintiffs.

Peter A Grammas, Harlan Frank ·Winn, III, Burr & Forman LLP, Birmingham, AL, Russell J Pope, Michael Salvatore Barranco, Pope & Hughes PA, Towson, MD, for defendant.

## MEMORANDUM OPINION AND ORDER

JOHNSON, District Judge.

This cause comes before this court on plaintiffs' Motion for Class Certification (doc. 13) and Amended Motion for Class Certification (doc. 19). The court has considered the memoranda of law filed in support of and against the motion for class certification, the parties' evidentiary submissions and the oral arguments of the parties at the hearing held on this motion.

### Factual Background

Plaintiffs' request certification under Federal Rule of Civil Procedure 23(b)(3) for a class defined as:

> All persons residing in the United States and its territories who, during the period one year prior to the date of the filing of this Complaint forward, obtained a federally-related mortgage loan from the defendant in which the borrower(s) HUD–1 reflects: (1) that the mortgage broker was paid a fee for its services from the "Borrowers' Funds" and/or the "Seller's Funds" at closing and (2) that First Union Mortgage Corporation paid the mortgage broker a fee outside of closing ("POC").

(doc. 19). The basis for plaintiffs' complaint against the defendant is that the defendant paid a "yield spread premium" to the mortgage broker Tennessee Valley Funding in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607. Section 2607(a) of RESPA mandates:

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

According to plaintiff the "yield spread premiums" paid by the defendant to various mortgage brokers is a referral fee that violates this statute. (doc. 1). Plaintiffs claim these fees are illegal because they are not based on any services or goods provided by the broker. To evidence this plaintiff points to the calculation method for determining these fees. Defendant would establish a "par rate", the rate at which defendant would offer loans, if the broker could then obtain the loan at a higher rate than par, the broker would receive the excess. This excess is what has been referred to as a "yield spread premium".

### Rule 23, Federal Rules of Civil Procedure

■ When ruling on a class certification "[t]he decision to certify is within the broad discretion of the court, but that discretion must be exercised within the framework of Rule 23." *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir.1996); citing *General Telephone Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). Courts must remain within this framework when deciding issues of class certification and can not venture outside the realm of Rule 23 to consider the merits of the underlying action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ("in determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met"); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir.1987); *see also Coon v. Georgia Pacific Corp.*, 829 F.2d 1563, 1566 (11th Cir.1987).

The foundation for any Rule 23 framework lies in Rule 23(a), Fed.R.Civ.P. The requirements of Rule 23(a) are recognized as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See Am-chem Products, Inc. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997). The defendant concedes the numerosity requirement of Rule 23(a)(1). Defendant's memorandum in opposition to plaintiff's motion for class certification at 20. The defendant contends that the proposed class can not meet the commonality, typicality, and adequacy of representation requirements.

■ The commonality, typicality, and adequacy of representation requirements are very similar and analysis of these three "tend to merge." *Washington v. Brown & Williamson Tobacco Corporation*, 959 F.2d 1566, 1569 n. 8 (11th Cir.1992); citing *General Telephone Co.*, 457 U.S. at 157, n. 13, 102 S.Ct. at 2364, n. 13, 72 L.Ed.2d 740 (1982). Commonality stems from Rule 23(a)(2) which allows class certification if "there are questions of law or fact common to the class". The rule does not require that all questions raised by the litigation be common. *Cox v. American Cast Iron Pipe Company*, 784 F.2d 1546, 1557 (11th Cir.1986). To satisfy the commonality requirement "[t]he claims actually litigated in the suit must simply be those fairly represented by the named plaintiffs." *Cox*, 784 F.2d at 1557.

■ Typicality is very similar to commonality: " 'Typicality' exists when 'a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff.' " *Andrews v. American Telephone & Telegraph Co.*, 95 F.3d 1014, 1022 (11th Cir.1996) *quoting In re American Medical Systems, Inc.* 75 F.3d 1069, 1082 (6th Cir.1996).

### Legal Analysis

■ The defendant argues that these requirements can not be met in this situation because "yield spread premiums" are not per se illegal. *Culpepper v. Inland Mortgage Corp.*, 144 F.3d 717 (11th Cir.1998). While 12 U.S.C. § 2607(a) disallows referral fees, 12 U.S.C. § 2607(c) does allow payments for "bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed." Defendant contends that the court would

have to address each individual loan to determine if the payment was for service compensation and if such payment was reasonable.

Much of defendant's argument against certification of the proposed class stems from the recent RESPA policy statement issued by the Department of Housing and Urban Development (HUD). 64 Fed.Reg. 10080. Defendant argues that each loan must receive individual evaluation because the policy statement instructs that "[a]ll payments, including payments based upon a percentage of the loan amount, are subject to the reasonableness test defined above." 64 Fed.Reg. at 10084. HUD bases this "reasonableness test" on a number of factors that, according to defendant, erode all typicality and commonality. Defendant interprets the statement to require the reasonableness test regardless of how the "yield spread premium" is generated or calculated.

This reasoning does not comport with the controlling law of this Circuit, which requires that payments relate to the services provided by the broker. See Culpepper, 144 F.3d at 718 ("The only issue decided by the court was whether as a matter of law Inland had proven in the instant record that this yield spread premium ... was a payment for goods or services and therefore not a prohibited referral fee"). Furthermore, the defendant's interpretation is logically inconsistent with RESPA itself. Under this analysis a mortgage company can provide "yield spread premiums" based solely on the difference between the par rate and the rate obtained and then when challenged, simply argue the referral fee was reasonable compensation in light of the actual service provided.

The logical conclusion of this interpretation would actually legalize some referral fees and kickbacks. For example some referral fees would constitute reasonable compensation because the mortgage company might fortuitously have had additional processing steps for that particular loan. Other referral fees would remain illegal because they were easily prepared and processed, rendering the addi-

tional fee unreasonable compensation. The ultimate result of this system would render the referral fee prohibition moot. Courts could no longer consider the nature of the fee, only the totality of the "compensation".[1] This is clearly at odds with the statutory language of 12 U.S.C. § 2607(a).

This interpretation is also inconsistent with the actual HUD policy statement: "HUD also believes that the market price used to determine whether a particular payment meets the reasonableness test may not include a referral fee or unearned fee, because such fees are prohibited by RESPA." 64 Fed.Reg. at 10086. The HUD statement even recognizes the potential for class based litigation: "The fees in cases or *classes* of transactions are illegal if they violate the prohibitions of Section 8 of RESPA." *Id.*, at 10084 (emphasis added).

In the facts before this court, the plaintiffs have alleged that the defendant does not link the payment of a yield spread premium to the performance of additional services by the broker. Plaintiffs' memorandum in support of plaintiffs' motion for class certification at 6. The plaintiff's allegation is essentially that the higher the interest rate the broker can make a loan for, the higher the payment the lender will give to the broker, no matter how much or less work was involved in obtaining that particular loan as compared to others. See Exhibit E to plaintiffs' memorandum. See also Exhibit D to plaintiffs' memorandum, deposition of James Wilson, at 20–21:

Q. But it's true, isn't it, that sometimes a broker is paid a yield spread premium by First Union?

A. If he elects an above-par-priced loan, yes.

Q. That's happened in the 44,000 transactions that we were talking about earlier, right?

A. That a yield spread premium was paid?

Q. Yes.

---

**1.** In other words, a court, examining the nature of the fee in question, would always have to look at a particular loan with hindsight. No forward look at the manner in which a company received fees would ever be sufficient to determine if a company was violating the law under the defendant's proposed interpretation.

A. I believe the 44,000 was the number of brokered loans that we had closed, of which approximately 50 percent were paid a yield spread premium.

Q. You said that the broker earns a yield spread premium when it's an above-par loan. What do you mean by that?

A. We price our loans—we, in the mortgage company, have a department, a secondary marketing department, that is responsible for pricing on a daily basis to both out retail distributing channels and our wholesale channels. The price is generally obtained in the morning, around 9:30 or 10:00, and we price to the various price levels that our investors require. And most of our loans are priced to Fannie Mae and Freddie Mac securities. So if you have—you have various note rates that we—that we procure from the Fannie, Freddie daily pricing screens which could have an above-par-price or a premium-price loan or a below-par-price or a discounted loan—and we offer those different price levels to our regional wholesale offices, who then send out a daily rate sheet to all of our independent mortgage brokers. So the brokers actually have the ability, depending on the needs of their customers, to price a loan either at par, above par, or below par.

Under this set of allegations, common questions of fact do present themselves for determination. The court finds that the defendant's argument against class certification is focused not on the elements of Rule 23 Fed. R.Civ.P., but on the merits of the underlying claims of the plaintiffs. Under Rule 23, Fed. R.Civ.P., this court may not consider the underlying merits of the cause or causes of action stated by the plaintiffs. *See General Telephone Co.*, 457 U.S. at 161, 102 S.Ct. at 2372.

■ Based on this the above considerations, the court finds that the loans and transactions which constitute the basis for the potential class action will not require individual evaluation and inspection. The question of whether the "yield spread premiums" are referral fees is a common one that will apply to all of the potential class members. The threshold for commonality is not high. The "rule requires only that resolution of the common questions affect all or a substantial number of the class members." *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir.1986). The class representatives' complaints regarding the "yield spread premium" paid in relation to their loan is common to and typical of the claims of the defined class.

■ The question regarding adequacy of representation is intertwined with the commonality and typicality analysis. *Washington*, 959 F.2d at 1569 n. 8. To satisfy the adequacy requirement the representatives must have claims similar to the rest of the class and the court must be satisfied that the representatives will vigorously litigate the interests of the class. *Andrews*, 95 F.3d at 1022. As the court has stated above, common questions of fact dominate the issues in this case. The plaintiffs were charged a yield spread premium by the defendant. The plaintiffs allege that each customer of the defendant charged a yield spread premium paid an illegal charge due to the manner in which the defendants assess the premiums. As such, the plaintiffs' claims are typical of the claims of the proposed class.

■ The defendant further argues that the plaintiffs are not adequate class representatives because they signed disclosure forms regarding the yield spread premium they were charged. However, the plaintiff argues that the charge itself, in the manner it is imposed, is illegal. If the plaintiffs can establish this claim, then the fact that the plaintiffs signed a disclosure form will not effect their claim against defendants.[2]

### Rule 23(b)(3), Fed.R.Civ.P. Requirements

Under Rule 23(b), Fed.R.Civ.P., a class action is maintainable when either (1) the

---

2. The other side of this argument is, of course, that the defendants establish that the yield spread premiums and the manner in which they are imposed is legal, in which case the plaintiffs will be unable to prevail on the merits. In either situation, the plaintiffs are adequate class representatives, regardless of the disclosure form. The court is uncertain however, whether the defendants are arguing that there are potential class members who were charged a yield spread premium which was not disclosed to those individuals.

prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications which would establish incompatible standards of conduct for the party opposing the class or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class or (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

This court finds that Rule 23(b)(3) is most applicable to this litigation. Under Rule 23(b)(3), Fed.R.Civ.P., this court must examine four factors to determine if this method of proceeding is superior to other available methods for the fair and efficient adjudication of the controversy. These are: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions, (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

No gain is conceivable from each of the class members getting to prosecute this case in his or her own name. In the testimony quoted, *supra*, a representative of the defendant alleges that the yield spread premiums in question were included in approximately 22,000 loans. This court can find no advantage to an additional 22,000 cases being brought before it. Similarly, no significant difficulties are presently foreseeable in the management of the class. The additional Rule 23(b)(3) requirement that "the questions of law or fact common to the members of the class predominate ..." is met as well. The question of whether the "yield spread premium" paid by the defendant is one for

service compensation is clearly the predominating question for the proposed class.

### Conclusion

After having reviewed the evidentiary submissions, filings, and conducted a hearing, this court is of the opinion that the proposed representatives of the action and their counsel are adequate for purposes of class litigation. This court is further of the opinion that class based litigation is the superior method for this litigation based on the numerous claims, common issues, and nature of the action.

It is therefore **ORDERED** that plaintiffs' motion for class certification be and hereby is **GRANTED.**

**DONE** and **ORDERED.**