**In re OLD KENT MORTGAGE COMPANY YIELD SPREAD PREMIUM LITIGATION.**

**No. CIV. 98–MD–1246 DSDJMM.**

United States District Court,
D. Minnesota.

Jan. 24, 2000.

Barry G. Reed, Hart Lawrence Robinovitch, Zimmerman & Reed, Minneapolis, MN, W. Lewis Garrison, Jr., Jackson Garrison & Sumrall, Birmingham, AL, for John Mackey, Rachel A. Yaseen, Alfred V. Mathews and Laura Mathews.

William Harvey Crowder, Susan Clair Bedor, Gregory Lee Paulson, Crowder & Bedor, St. Paul, MN, for Gladys Starks.

George F. McGunnigle, Todd A. Noteboom, Leonard Street & Deinhard, Minneapolis, MN, William K. Holmes, Warner Norcross & Judd, Grand Rapids, MI, for Old Kent Mortgage Co.

## ORDER

DOTY, District Judge.

This matter is before the court on (1) defendant's motion to strike class allegations and (2) plaintiff Gladys Starks's motion to voluntarily dismiss her action. Based on a review of the file, record, and proceedings herein, the court grants defendant's motion and grants plaintiff Starks's motion.

## BACKGROUND

On November 5, 1998, the Federal Judicial Panel on Multidistrict Litigation ("MDL Panel") transferred this consolidated litigation to the District of Minnesota pursuant to 28 U.S.C. § 1407. The litigation involves four class actions: two from Alabama, *Milton R. Callahan et al. v. Old Kent Mortgage Co.,* Civ. No. 98–AR–0200–S (N.D.Ala.), and *Alfred Matthews et al. v. Old Kent Mortgage Co.,* Civ. No. 98–N–224–SROS; one from Minnesota, *Gladys D. Starks et al. v. Old Kent Mortgage Co. et al.,* Civ. No. 98–862 (D.Minn.); and one from Arizona, *John W. Mackey et al. v. Old Kent Mortgage,* Civ. No. 98–1105 PHX ROS (D.Az.). In transferring these actions to Minnesota for coordinated and consolidated pretrial proceedings, the MDL Panel stated that "the actions in this litigation involve common questions of fact concerning allegations by overlapping classes that [defendant's] payment of a yield spread premium or broker premium violates the Real Estate Settlement Procedures Act." *In re Old Kent Mortgage Company Yield Spread Premium Litigation,* M.D.L. No. 1246 (Nov. 9, 1998).

Defendant Old Kent Mortgage Company ("Old Kent") is a mortgage lender and servicer of home mortgages based in Grand Rapids, Michigan. The named plaintiffs in each of the consolidated cases are borrowers who used mortgage brokers to obtain home mortgage loans that were ultimately funded by Old Kent. In each case, plaintiffs allege that Old Kent compensated the mortgage brokers with "yield spread premiums" or similarly denominated payments. Yield spread premiums are payments made by the lender to the broker based on factors like the interest rate and points of the mortgage loan. Typically, the amount of the yield spread premium will increase in proportion with the loan's rise above the "par" interest rate, i.e., the base interest rate at which a lender will make a type of loan to a qualified borrower. In each of the consolidated cases, plaintiffs allege that Old Kent's payment of a yield spread premium to brokers constitutes a "referral" or "split fee" in violation of section 8 of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607.[1] In each case, the putative class is characterized, in so many words, as all borrowers who obtained a mortgage loan from Old Kent in which a yield spread premium or similar premium was paid to the broker.

Old Kent now brings a motion to strike the class allegations contained in each of the complaints. Plaintiff Starks also brings a motion for voluntary dismissal.

## DISCUSSION

### A. Motion to Dismiss

■ Plaintiff Gladys Starks moves to voluntarily dismiss her complaint under Federal Rule of Civil Procedure 41(a). Rule 41(a)(2) provides that, absent a stipulation by the parties, an action shall be dismissed at the instance of the plaintiff only "upon order of the court and upon such terms and conditions as the court deems proper." When considering whether to grant a plaintiff's Rule 41(a)(2) motion, the court considers the following equitable factors:

(1) the defendant's effort and the expense involved in preparing for trial, (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, (3) insufficient explanation of the need to take a dismissal, and (4) the fact that a motion for summary judgment has been filed by the defendant.

*Witzman v. Gross,* 148 F.3d 988, 991 (8th Cir.1987). Here, Old Kent objects to the dismissal of Starks at least until the time that the court rules on Old Kent's motion to strike class allegations, which was filed prior

---

1. The *Starks* and *Mackey* complaints also allege state common law claims: tortious interference, inducement to breach fiduciary duty, unfair and deceptive practice, and unjust enrichment.

to Starks's motion. Old Kent believes that once the court dismisses Starks's suit, the only Minnesota case in this consolidated litigation, the remaining plaintiffs will file a motion before the MDL Panel requesting that the case be transferred to a different forum. Plaintiffs have indicated that they would pursue such transfer in the event that the court dismissed Starks's complaint.

A divergence in RESPA caselaw drives this dispute over Starks's motion to dismiss. Starks filed her complaint in the District of Minnesota, while the Callahans and Matthewses filed their complaints in the Northern District of Alabama. Since 1998, courts in this district have routinely denied class certification in RESPA suits brought against lenders and brokers. *See, e.g., Kroskin v. Aggressive Mortgage Co.,* Civ. No. 98–600 (MJD/AJB) (D.Minn. July 12, 1999) (Davis, J.); *Levine v. North American Mortgage,* 188 F.R.D. 320 (D.Minn. July 1, 1999) (Tunheim, J.); *Yasqur v. Aegis Mortgage Corp.,* Civ. No. 98–121 (JMR/FLN) (D.Minn. March 10, 1999) (Rosenbaum, J.); *Schmitz v. Aegis Mortgage Corp.,* Civ. No. 97–2142 (DSD/JMM), 1998 WL 1100084 (D.Minn. Aug. 3, 1998) (Doty, J.). Recently, however, several courts in the Northern District of Alabama have granted certification in similar RESPA suits. *See infra* Part B. For obvious reasons, Old Kent desires to keep the present litigation in Minnesota, while plaintiffs wish for the court to immediately dismiss Starks and defer ruling on Old Kent's motion while they move the MDL Panel for transfer to the Northern District of Alabama. Starks's motion for voluntary dismissal thus implicates more than just the question of whether she should be permitted to withdraw from the present litigation.

After balancing the equities, the court concludes that it should grant Starks's motion for voluntary dismissal, but only after deciding the merits of Old Kent's motion to strike class allegations. A deferred dismissal will do nothing to prejudice Starks, who desires to forgo her claims in any event. It will, however, protect Old Kent from any unfair delay in the resolution of its already-filed motion to strike class allegations. While the remaining plaintiffs contend that the current posture of the case unfairly subjects them to the law of the transferee court, the court concludes differently. Plaintiffs have brought nationwide class complaints against Old Kent under a federal law intended to have uniform application. In these circumstances, "'the transferee court [should] be free to decide a federal claim in the manner it views as correct without deferring to the interpretation of the transferor court.'" *In re Korean Air Lines Disaster,* 829 F.2d 1171, 1174 (D.C.Cir.1987) (citation omitted), *aff'd sub nom. Chan v. Korean Air Lines, Ltd.,* 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989). *See also Temporomandibular Joint (TMJ) Implant Recipients v. E.I. Du Pont De Nemours & Co.,* 97 F.3d 1050, 1055 (8th Cir.1996) ("When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located."). Nonetheless, the court will carefully consider the recent decisions from the Northern District of Alabama when analyzing the RESPA issues in this case.

## B. Old Kent's Motion to Strike Class Allegations

Old Kent moves the court for an order striking all class allegations in plaintiffs' complaints. Many of the issues raised by Old Kent's motion have already been addressed by this court in *Schmitz v. Aegis Mortgage Corp. See* Civ. 97–3142, 1998 WL 1100084 (D.Minn. Aug. 3, 1998) (order denying RESPA plaintiff's motion for class certification); 48 F.Supp.2d 877 (D.Minn. April 23, 1999) (order granting defendants summary judgment). However, in view of the intensity with which plaintiffs have critiqued the *Schmitz* decisions and other RESPA decisions from this district, the court will spend some time discussing (1) the appropriate standard for evaluating the legality of yield spread premiums under RESPA and (2) the implications of that standard on the question of class certification in this case.

### 1. Standard for Evaluating the Legality of Yield Spread Premiums Under RESPA

In 1974, Congress enacted RESPA to protect home buyers "from unnecessarily high

settlement charges caused by certain abusive practices." *See* 12 U.S.C. § 2601(a). Section 8 of RESPA seeks to eliminate "kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." *Id.* § 2601(b)(2). Specifically, section 8(a) provides:

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

*Id.* § 2607(a). And Section 8(b) provides:

No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

*Id.* § 2607(b). However, section 8(c) of RESPA exempts bona fide payments for goods or services from the prohibitions of sections 8(a) and (b), including "the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed." *Id.* § 2707(c)(2).

On March 1, 1999, the U.S. Department of Housing and Urban Development ("HUD") issued a Policy Statement addressing the issue of lender payments to mortgage loan brokers, including yield spread premiums, in the context of RESPA. *See* Real Estate Settlement Procedures Act (RESPA) Statement of Policy 1999–1 Regarding Lender Payments to Mortgage Brokers. *See* 64 Fed.Reg. 10,080 (1999) (to be codified at 24 CFR, pt. 3500). The Policy Statement was HUD's response to a congressional directive that HUD clarify its position on the legality of lender payments under RESPA. *See Conference Report on the Departments of Veteran Affairs and Housing and Urban Development, and Independent Agencies Appropriation Act, 1999,* H.R. CONF. REP. No. 105–769, at 260. The Conference Report expressed concern "about the legal uncertainty that continues absent such a policy statement." *Id.* The Report also stated

that "Congress never intended payments by lenders to mortgage brokers for goods or facilities actually furnished or for services actually performed to be violations of [RESPA]." *Id.*

The HUD Policy Statement begins by expressly acknowledging that yield spread premiums are not illegal per se: "In transactions where lenders make payments to mortgage brokers, HUD does not consider such payments (i.e., yield spread premiums or any other class of named payments) to be illegal per se. HUD does not view the name of the payment as the appropriate issue under RESPA." 64 Fed.Reg. at 10,084. The Policy Statement then sets forth a two-step framework for analyzing the legality of lender payments to brokers:

In determining whether a payment from a lender to a mortgage broker is permissible under Section 8 of RESPA, the first question is whether goods or facilities were actually furnished or services were actually performed for the compensation paid. The fact that goods or facilities have been actually furnished or that services have been actually performed by the mortgage broker does not by itself make the payment legal. The second question is whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

*Id. See also id.* at 10,085 ("The determinative test under RESPA is the relationship of the services, goods or facilities furnished to the total compensation received by the broker."); *id.* at 10,085–86 ("The fact that goods or facilities have been actually furnished or that services have been actually performed by the mortgage broker ... does not by itself make payment by a lender to a mortgage broker legal. The next inquiry is whether the payment is reasonably related to the value of the goods or services that were actually performed.").

The Policy Statement makes it abundantly clear that lender payments to brokers, including yield spread premiums, are not subject to special scrutiny under the foregoing framework. Rather, these payments are to be factored in as one element of the broker's

"total compensation" when evaluating the overall reasonableness of a mortgage transaction:

> [I]n applying this test, HUD believes that total compensation should be scrutinized to assure that it is reasonably related to goods, facilities, or services furnished or performed to determine whether it is legal under RESPA. Total compensation to a broker includes direct origination and other fees paid by the borrower, indirect fees, including those that are derived from the interest rate paid by the borrower, or a combination of some or all.

*Id.* at 10,086. *See also id.* ("All payments, including payments based upon a percentage of the loan amount, are subject to the reasonableness test defined above."); *id.* ("In determining whether the compensation paid to a mortgage broker is reasonably related to the goods or facilities actually furnished or services actually performed, HUD will consider all compensation, including any volume based compensation."); *id.* ("In light of the fact that the borrower and the lender may both contribute to some items, HUD believes it is best to evaluate seemingly duplicative fees by analyzing total compensation under the reasonableness test described above.").

HUD's "total compensation" approach is designed to take account of several practical realities in the contemporary mortgage market: (1) that "all services, goods, and facilities [provided by a broker] inure to the benefit of both the borrower and lender in the sense that they make the loan transaction possible," *id.;* (2) that it is not "necessary or feasible to identify or allocate which facilities, goods, or services are performed or provided for the lender, for the consumer, or as a function of State or Federal law," *id.;* (3) that "[t]he consumer is ultimately purchasing the total loan and is ultimately paying for all the services needed to create the loan," *id.;*

(4) that "[a]ll compensation to the broker is paid by the borrower in the form of fees or points, directly or by addition to the principal, or is derived from the interest rate of the loan paid by the borrower," *id.* As HUD recognizes, these practical considerations make it problematic, on both a policy level and an evidentiary level, to prohibit lender payments when they play a role in reasonably compensating a broker for the costs incurred in originating a mortgage loan. Accordingly, HUD concludes that the factfinder should consider the broker's "total compensation," from both borrower and lender, when "analyzing whether lender payments to brokers comport with the requirements of section 8 of RESPA." *Id.*

Under the HUD test, then, the threshold question in evaluating yield spread premiums is simply whether the mortgage broker has actually provided goods, facilities, or services in connection with the loan transaction. If this showing is made, the question becomes whether the "total compensation" received by the broker—including all payments made by the borrower and the lender—is reasonably related to the value of the goods, facilities, or services actually provided.[2] *See Schmitz,* 48 F.Supp.2d at 882; *Levine,* 188 F.R.D. at 328. If the total compensation paid to the broker is reasonably related to the value of the goods and services actually provided, the yield spread premium is valid under RESPA. However, if the total compensation paid to the broker is not reasonably related to the value of the goods, facilities, or services actually provided, the yield spread premium violates RESPA.

Several recent federal decisions from the Northern District of Alabama granting class certification to RESPA plaintiffs have rejected the reasonableness test as logically inconsistent with the statutory purposes of RESPA.[3] *See Heimmermann v. First Union*

---

**2.** The Policy Statement provides this illustration: "For example, if the lender pays the mortgage broker $600 and the borrower pays the mortgage broker $500, the total compensation of $1,100 would be examined to determine whether it is reasonably related to the goods or facilities actually furnished or services actually performed by the broker." *Id.* at 10086.

**3.** None of these decisions expressly reject the guidance of the HUD Policy. *Dujanovic* does not address the HUD Policy Statement at all, but instead follows the pre-Statement approach to RESPA liability adopted by the Eleventh Circuit in *Culpepper v. Inland Mortgage Corp.,* 144 F.3d 717, 718 (11th Cir.1998), which requires lenders to link yield spread premiums to specific goods and services provided by the broker. *Heimmer-*

*Mortgage Corp.,* 188 F.R.D. 403 (N.D.Ala. Aug. 13, 1999); *Culpepper v. Inland Mortgage Corp.,* Nos. CV 96–BU–0917–S, CV 98–BU–2187–S, 1999 WL 1135127 (N.D.Ala. July 20, 1999); *Dujanovic v. MortgageAmerica, Inc.,* 185 F.R.D. 660 (N.D.Ala. March 25, 1999). In *Dujanovic,* for example, the court stated:

> [The] position that every loan transaction must be analyzed for reasonableness would allow lenders to pay prohibited referral fees with impunity, so long as they could later provide a laundry list of services or goods to support their claim that the payment actually was compensation for goods to support their claim that the payment actually was compensation for those services or goods. . . .
>
> The express purpose of the legislation reveals that Congress did not intend to prevent brokers from receiving payment; but rather to protect borrowers from brokers who are motivated to market loans at interest rates higher than the best par rate available. This suggests that the fee must be judged from the perspective of when and why it is paid, and not, in retrospect, for what the fee could be said to compensate.

185 F.R.D. at 669. *See also Heimmermann,* 188 F.R.D. at 406 ("The ultimate result of [the reasonableness] system would render the referral fee prohibition moot. Courts could no longer consider the nature of the fee, only the totality of the 'compensation.' "); *Culpepper,* 1999 WL 1135127 at *4 ("The key to the RESPA violation is the purpose of the payment, the determination of which can be made on general, class-wide basis by focusing on the Defendant's stated goals or objectives in paying a yield spread premium."). In other words, courts that challenge the propriety of a reasonableness test do so on the ground that it ignores the motivation or intent of the lender who pays the yield spread premium to the broker.

mann and the district court's recent class certification order in *Culpepper* conclude that the HUD Policy Statement is consistent with the Eleventh Circuit approach. As this court discussed in *Schmitz,* however, the functional approach articulated by HUD in its Policy Statement cannot be reconciled with the stringent test set forth by the Eleventh Circuit. *See* 48 F.Supp.2d at 881–82.

However, neither the HUD Policy Statement nor the statutory language supports the proposition that subjective intent is a factor in determining liability under RESPA. First, there is no mention of intent in the Policy Statement. Rather, as stated above, the Policy Statement simply requires the factfinder to determine whether the broker provided goods, facilities, or services and whether the total compensation for the value of these goods, facilities, or services was reasonable. Indeed, HUD expressly instructs that the factfinder should analyze a lender's payment of "indirect fees"—which are, by definition, calculated on the basis of something other than the broker's provision of goods or services to the borrower—under the reasonableness framework. *See* Levine, 188 F.R.D. at 329 n. 16. *See also* 64 Fed.Reg. at 10,084 ("HUD does not view the name of the payment as the appropriate issue under RESPA.").

Second, the text of subsections §§ 8(a)–(c) of RESPA contains no intent requirement. Subsection (d)(3) does contain a provision stating that no person "shall be liable for a violation of the provisions of subsection (c)(4)(A) . . . if such person proves by a preponderance of the evidence that such violation was not intentional and resulted from a bona fide error notwithstanding maintenance of procedures that are reasonably adapted to avoid such an error." However, the fact that Congress narrowly tailored this intent-based safe harbor to subsection (c)(4)(A) indicates that intent is not relevant to liability under RESPA §§ 8(a) and (b). *See Nowacki v. Federated Realty Group, Inc.,* 36 F.Supp.2d 1099, 1104 (E.D.Wis.1999) ("Because the safe-harbor provision is limited to violations of § 2607(c)(4)(A), and the other sections are silent as to intent, a reasonable inference is that liability may be established under §§ 2607(a) and (b) without the necessity of proving intent.").

*See also Levine,* 188 F.R.D. at 328–29 (concluding that the HUD Statement establishes a different test than *Culpepper* ); *Golon v. Ohio Savs. Bank,* No. 98 C 7430, 1999 WL 965593 (N.D.Ill. Oct. 15, 1999) (concluding that the *Culpepper* test "has been superseded by the test articulated in HUD's Policy Statement").

Further, the court disagrees with the suggestion that the reasonableness test articulated in HUD's Policy Statement undermines the statutory purposes of RESPA. Congress has clearly stated that it enacted RESPA to protect consumers from "unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a). As Judge Tunheim observed in *Levine,* "By simply ensuring that the broker's total compensation is reasonably related to the goods or services the broker actually furnishes, the Policy Statement serves RESPA's primary goal of preventing kickbacks or referral fees that unnecessarily and unreasonably increase the costs of settlement services." 188 F.R.D. at 328. A reasonableness approach is particularly appropriate in the context of lender payments to brokers, a trend that emerged in the 1980s, long after the enactment of RESPA, in conjunction with the rise of the mortgage brokerage industry and the secondary mortgage market. *See* 64 Fed.Reg. at 10,080. *See also id.* at 10,086 (observing that, when evaluating mortgage loans originated by retail brokers, it is not "feasible to identify or allocate which facilities, goods, and services" are provided for the lender or for the borrower). In its Policy Statement, HUD notes the flexibility that lender payments like yield spread premiums provide consumers and brokers: "Lender payments to mortgage brokers may reduce the up-front costs to consumers. This allows consumers to obtain loans without paying direct fees themselves." *See id.* at 10,081. HUD also observes that RESPA is not violated merely by the fact that a lender realizes some benefit from a loan transaction it has partially funded: "The Department realizes that some of the goods or facilities actually furnished or services actually performed by the broker in originating a loan are 'for' the lender and other goods or facilities actually furnished or services actually performed are 'for' the borrower." *Id.* at 10,086. Indeed, as noted above, a congressional conference committee has recently stated that "Congress never intended payments by lenders to mortgage brokers for goods or facilities actually furnished or for services actually performed to be violations of [RESPA]!" H. Conf. Rep. No. 105–769 at 260.

In short, given the complex dynamics of the contemporary mortgage market, HUD's adoption of a reasonableness test for evaluating lender payments to brokers is entirely consistent with the consumer-protection goals of RESPA. The reasonableness approach promotes the ability of consumers to reduce up-front costs in obtaining mortgage loans while at the same time preventing brokers and lenders from raising settlement costs unreasonably high. Because the HUD framework is a reasonable interpretation of RESPA, the court has no choice but to apply it to plaintiffs' RESPA claims in this litigation. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

## 2. Class Determination Under Federal Rule 23

Federal Rule 23(c)(1) provides that "as soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Any party may move for a class determination under Rule 23(c)(1). *See* 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1785. Under Rule 23(a), the proposed class must satisfy the threshold requirements of (1) numerosity, (2) commonality, (3) typicality, (4) adequacy of representation. If plaintiff satisfies these requirements, then plaintiff must establish that his action on behalf of the class falls within one of the three categories listed in Fed.R.Civ.P. 23(b). In this case, Old Kent concedes for purposes of its motion that plaintiffs can meet the requirements of Rule 23(a). Old Kent argues, however, that the class alleged by plaintiffs cannot satisfy Rule 23(b)(3):

> that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). A claim will satisfy the predominance requirement "when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *See In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D.Minn. 1995)

Plaintiffs contend that their RESPA claims can be resolved using generalized evidence. They point to language in the HUD Statement that, they argue, enables them to establish Old Kent's liability on a class-wide basis:

> [W]hile a broker may be compensated for goods or facilities actually furnished or services actually performed, the loan itself, which is arranged by the mortgage broker, cannot be regarded as a 'good' that the broker may sell to the lender and that the lender may pay for based upon the yield's relation to market value, reasonable or otherwise.

64 Fed.Reg. at 10085. Plaintiffs proffer a series of alleged admissions by Old Kent that the company viewed its yield spread premiums to be compensation for "goods," i.e., mortgage loans and the servicing rights to those loans. *See, e.g.*, Warrington Aff. at ¶ 3 ("The primary purpose of [Old Kent's] loan origination and purchasing activities is to obtain the valuable rights to service mortgage loans for investors."); *id.* at ¶ 9 (stating

that yield spread premium compensates the broker for "providing [Old Kent] with a valuable 'good' represented by [the borrower's] loan and the servicing rights associated with the loan.").[4] Plaintiffs argue that this state-of-mind evidence establishes Old Kent's liability with respect to all transactions in which it has paid a yield spread premium, regardless of the individual circumstances surrounding the loan transactions.

■ As discussed above, however, under the HUD approach, the issue of motivation or intent is irrelevant to the question of whether or not a lender has violated RESPA. While the HUD Statement prevents a lender from making the legal argument that the mortgage loan itself is a good, it provides no indication that a lender's belief that it is buying a good is material to the factual question of liability.[5] Rather, as HUD repeatedly remarks in its Policy Statement, RESPA liability hinges solely on the two-part reasonableness test: First, the factfinder must determine whether goods, facilities, and services were actually provided by the broker in the course of each mortgage loan transaction. Second, the factfinder must evaluate whether the total compensation paid to the broker in connection with the loan is commensurate with the goods, facilities, and services provided. Neither of these transaction-specific inquiries is susceptible to class adjudication under Rule 23(b)(3). *See Golon*, 1999 WL 965593 at *5 (citing post-HUD Statement cases concluding that reasonableness test precludes RESPA plaintiffs from proceeding as class); *Schmitz*, 1998 WL 1100084 at *3 (citing pre-HUD Statement

---

**4.** These alleged admissions actually appear in evidentiary material generated during the course of another RESPA suit, *Barbosa v. Target Mortgage Corp.*, 968 F.Supp. 1548 (S.D.Fla.1997). The lender in that case was Princeton Financial Corporation, an independent subsidiary of Old Kent. Old Kent does not oppose the use of these materials in resolving the class issue in the present litigation.

**5.** As HUD states, "it is not proper to *argue* that a loan is a 'good,' in the sense of an instrument bearing a particular yield, thus *justifying* any yield spread premium to the mortgage broker, however great, on the grounds that such yield spread premium is the 'market value' of the good." 64 Fed.Reg. at 10085 (emphasis added). This means that a lender may not, under the

HUD framework, justify the reasonableness of a yield spread premium by pointing to the value of an above-par loan in the secondary mortgage market. *See also id.* at 10086 ("[H]igher interest rates alone cannot justify higher total fees to mortgage brokers."). Likewise, a lender may not justify the reasonableness of a yield spread premium by factoring in its value as a referral mechanism. *See id.* ("[T]he market price used to determine whether a particular payment meets the reasonableness test may not include a referral fee or unearned fee."). However, HUD provides no place in its reasonableness framework for an assessment of what was going on in the mind of a lender at the time it paid the yield spread premium.

cases that have denied class certification in yield spread premium cases).[6]

The court also concludes that the common law claims brought in the Starks and Mackey complaints are not amenable to class certification. As in the RESPA context, Old Kent's liability under common law can be determined only on the individualized facts of each loan transaction. *See Schmitz*, 1998 WL 1100084 at *5. Accordingly, the court concludes that Old Kent's motion to strike class allegations must be granted in its entirety.[7]

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendant's motion to strike class allegations (Doc. No. 11) is granted.

2. Plaintiff Gladys Starks's motion for voluntary dismissal (Doc. No. 15) is granted.

---

**6.** Indeed, plaintiffs' counsel conceded at oral argument that the HUD test, as interpreted by this court, precludes class certification on the alleged facts of this case. Tr. of Oral Argument (Oct. 29, 1999) ("Clearly if you get to the reasonableness, [Old Kent is] home free on class certification ....").

**7.** Neither party addresses in any detail whether class certification would be appropriate under Rule 23(b)(2). Rule 23(b)(2) "permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class'" *Amchem*, 521 U.S. at 614, 117 S.Ct. 2231. In the present case, however, where the primary relief sought by the plaintiffs is not equitable and where substantive liability cannot be determined on a generally applicable basis, the court concludes that class certification under Rule 23(b)(2) would be inappropriate. *See Taylor v. Flagstar Bank, F.S.B.*, 181 F.R.D. 509, 518–19 (M.D.Ala.1998) (denying RESPA plaintiff's motion to certify class under Rule 23(b)(2)).