Joe McCRILLIS and Angie McCrillis, Plaintiffs,

v.

WMC MORTGAGE CORP. and Realty Mortgage Corp., Defendants.

Civ.A. No. 3:00CV210LN.

United States District Court, S.D. Mississippi, Jackson Division.

Oct. 24, 2000.

Charles E. Gibson, III, Jackson, MS, for plaintiff.

Anthony J. Rollo, McGlinchey Stafford, New Orleans, LA, William H. Leach, Beth L. Orlansky, McGlinchey Stafford, Jackson, MS, G. Todd Burwell, William L. Latham, Latham & Burwell, PLLC, Jackson, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant WMC Mortgage Corp. for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs Joe and Angie McCrillis have responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments and supplemental authorities submitted by the parties, concludes that the motion should be granted.

The following basic facts giving rise to this lawsuit are not in dispute. In February 1999, Joe and Angie McCrillis obtained a residential mortgage loan from defendant WMC through a mortgage broker, defendant Realty Mortgage Corp. According to plaintiffs, in connection with the loan, plaintiffs paid to Realty a one percent origination fee (which equaled $1,083), and in addition, unbeknownst to plaintiffs, WMC also paid Realty $1,083, which it in turn recouped from plaintiffs by charging them an above-par interest rate; this is what is known as a yield spread premium.[1]

---

1. As one court has explained, "Yield spread premiums are payments made by a mortgage lender to a mortgage

Plaintiffs filed this lawsuit against WMC and Realty charging that the fee paid by WMC to Realty violated certain provisions of the Real Estate Settlement Practices Act (RESPA), 12 U.S.C. § 2601 *et seq.*, as well as the Mississippi Consumer Loan Broker Act (CLBA), Miss.Code Ann. § 81–19–1. In its motion for summary judgment, WMC maintains that plaintiffs cannot show that WMC's payment of a yield spread premium as compensation to plaintiffs' mortgage broker violated either RESPA or CLBA and that WMC is therefore entitled to summary judgment.

RESPA, which applies to "federally related" mortgage loans, *see* 24 C.F.R. § 3500.5(a), was enacted by Congress to protect home buyers from "unnecessarily high settlement charges caused by certain abusive practices." 12 U.S.C. § 2601(a). Among other things, Congress intended to eliminate "kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(b)(2). RESPA contains two prohibitions which plaintiffs contend were violated by defendants herein. First, § 2607(a) prohibits referral fees and kickbacks in connection with settlement services, stating as follows:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

Section 2607(b) of the Act provides:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

*See also* 24 C.F.R. § 3500.14(a) ("A charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee and violates this section."). Section 2607(c), however, creates an exemption for certain payments, stating:

> Nothing in this section shall be construed as prohibiting ... the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed.

Here, plaintiffs acknowledge that in light of the exception established by subsection (c), yield spread premiums are not per se illegal. They disagree with WMC, though, as to the appropriate test for determining, in a given case, whether a particular payment is illegal. Plaintiffs submit that the proper test for assessing the legality of yield spread premiums under RESPA is this: First the court must determine whether the yield spread premium is somehow tied to goods, facilities or services allegedly being purchased with the yield spread premium. If not, then the "services" defense of § 2706(c) is not available to the defendant. But if there is such a nexus between the yield spread premium and goods, facilities or services, the next step is to determine whether the amount paid was reasonable. *See Culpepper v. Inland Mortgage Co.*, 132 F.3d 692 (11th Cir.1998), *reh'g denied,* 144 F.3d 717 (11th Cir.1998) (articulating this two-step test). Under this formulation of the test, the payment of a fee to a broker violates s 2607(a) and (b) unless the defendant "affirmatively show[s] that the premium was

broker on an 'above par' loan brought to the lender by the broker. To be 'above par' is to be above the current going rate, to be above the lowest rate that a lender will offer without charging 'discount points.' In crude terms, therefore, the yield spread premium is (allegedly) simply a payment made

by the lender to the broker in return for the broker having brought the lender a high interest loan."
*Potchin v. Prudential Home Mortgage Co., Inc.,* No. 97–CV–525 (CBA), 1999 WL 1814612 (E.D.N.Y.1999) (quoting *Taylor v. Flagstar Bank,* 181 F.R.D. 509, 511 (N.D.Ala.1998)).

compensation for a particular good or service," *Schmitz v. Aegis Mortgage Corp.*, 48 F.Supp.2d 877, 881 (D.Minn.1999); and only if the defendant makes this showing does the issue of reasonableness even arise.

█ For its part, WMC maintains that the proper test is not that set forth in *Culpepper* and urged by plaintiffs, but rather is a two-part test established by a March 1, 1999 Policy Statement issued by the United States Housing and Urban Development (HUD). In this Policy Statement, HUD made clear its position that yield spread premiums are not per se illegal, Real Estate Settlement Procedures Act (RESPA) Statement of Policy 1999–1, 64 Fed.Reg. 10080, 10084 (1999) ("In transactions where lenders make payments to mortgage brokers, HUD does not consider such payments (i.e., yield spread premiums or any other class of named payments), to be illegal per se."), and set out a two-part test to determine whether RESPA has been violated by a lender's payment to a broker:

> In determining whether a payment from a lender to a mortgage broker is permissible under Section 8 of RESPA, the first question is whether goods or facilities were actually furnished or services were actually performed for the compensation paid. The fact that goods or facilities have been actually furnished or that services have been actually performed by the mortgage broker does not by itself make the payment legal. The sec-

ond question is whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

*Id.* HUD elaborated on how the first step works:

> In the determination of whether payments from lenders to mortgage brokers are permissible under Section 8 of RESPA, the threshold question is whether there were goods or facilities actually furnished or services actually performed for the total compensation paid to the mortgage broker.

*Id.* at 10085. If services were actually performed, the question becomes whether the total compensation to the broker "is reasonably related to goods, facilities, or services furnished or performed." *Id.* at 10086. Under the HUD test, as contrasted with the *Culpepper* test, no affirmative showing need be made that yield spread premiums were paid for goods or services other than the referral of a loan. *See Isara v. Community Lending, Inc.*, Civ. No. 99–00310SPK, at 7 (D.Hawaii Jan. 20, 2000); *Levine v. North Am. Mortgage*, 188 F.R.D. 320, 326–27 (D.Minn.1999).

█ In this case, there is no question but that the requirements of the HUD test advocated by WMC are met. The evidence establishes that Realty performed a number of valuable compensable "services" in successfully arranging the plaintiffs' loan.[2] Moreover, the total compensation

---

**2.** HUD regulations define "settlement service" as "any service provided in connection with a prospective or actual settlement, including ... [p]rovision of any service related to the origination, processing or funding of a federally related mortgage loan." 24 C.F.R. § 3500.2(b). The HUD Policy Statement lists a variety of services that, if performed, would entitle a broker to compensation, including services such as taking information from the borrower and filling out the loan application; analyzing the borrower's income and debt; collecting financial and other documents; ordering appraisals; and participating in the closing. 64 Fed.Reg. at 10085. In this case, as detailed by defen-

dants, Realty (1) met with the McCrillises to consult with them about their needs, to counsel them about available products and pricing, and to obtain from them all information necessary to apply for a mortgage loan; (2) advised plaintiffs on interest rate risk and locking in a favorable interest rate; (3) determined the lender that offered a loan product and pricing most appropriate for the McCrillises; (4) completed their loan application and submitted it to WMC; (5) prepared and conveyed to plaintiffs various disclosure documents required by law, such as the Good Faith Estimate, Servicing Disclosure and Truth–in–Lending Disclosure Statement; (6) initiated and ordered appraisals; (7) verified

received by Realty, which at 2.3% was within the typical compensation range for mortgage brokers in the Mississippi area, was reasonably related to the value of Realty's services.[3] Plaintiffs do not contest these facts, but claim that under the *Culpepper* test, which they maintain governs the inquiry, the reasonableness of the compensation received by Realty is irrelevant in the absence of proof from defendant that the compensation was actually intended as compensation for the particular services performed by Realty and not for referral of the plaintiffs' business. It is this court's opinion, however, based on its reading of HUD's Policy Statement and its review of decisions of the numerous judges that have considered this issue, that so long as there is proof that the mortgage broker actually furnished goods or facilities or performed services in connection with arranging a mortgage, and the broker's total compensation is reasonably related to the value of such facilities, goods or services, the payment of a yield spread premium is legal.

In this vein, the court is aware that the majority of judges that have addressed this issue have adopted the HUD formulation of the test described above, with most recognizing that the more stringent *Culpepper* approach cannot be reconciled with HUD's more functional approach. *See In re Old Kent Mortgage Co. Yield Spread Premium Litigation*, 191 F.R.D. 155 (D.Minn.2000) (Judge Doty); *Lee v. N.F. Investments, Inc.*, No. 4:99CV426ERW (E.D.Mo. March 15, 2000); *Isara v. Community Lending, Inc.*, Civ. No. 99–00310SPK (D.Hawaii Jan. 20, 2000); *Potchin v. Prudential Home Mortgage Co., Inc.*, No. 97–CV–525 (CBA), 1999 WL 1814612 (E.D.N.Y. Nov. 12, 1999); *Golon v. Ohio Sav. Bank,* No. 98C7430, 1999 WL 965593 (E.D.Ill. Oct. 15, 1999); *Buckley v. Firestar Home Mortgage,* No. 98 C 5092 (N.D.Ill. Aug. 26, 1999); *Hamilton v. North American Mortgage,* 1999 WL 33117170 (D.Me. July 26, 1999); *Kroskin v. Aggressive Mortgage Corp.,* No. 98–600 MJB/AJB (D.Minn. July 12, 1999) (Judge Davis); *Drootman v. First Nationwide Bank,* No. Civ. 97–252 PHX PGR TSZ (D.Ariz. June 2, 1999); *Medlock v. Chase Manhattan Mortgage Corp.,* No. 1:98–CV–1927–RWS (D.Ga. April 21, 1999) (Judge Story); *Paul v. National City Mortgage Co.,* No. 1:98–CV–216–WBH (D.Ga. March 11, 1999); *Yasgur v. Aegis Mortgage Corp.,* No. Civ. 98–CV–121 (JMR/FLN) (D.Minn. March 9, 1999) (Judge Rosenbaum).

Some others have stood by *Culpepper,* insisting on its continued viability under, or in spite of, the HUD Policy Statement, based on their view that unless it can be established that the compensation paid to the broker is intended to be "for" the services, in the sense of quid pro quo, RESPA is violated. *See Jones v. USMoney Source, Inc.,* No. 1:99–CV–1522A–JEC (N.D.Ga. Aug. 9, 2000) (Judge Carnes); *Perry v. Mid South Mortgage, Inc.,* No. CV–98–3205–W (N.D.Ala. Aug. 3, 2000); *Culpepper v. Inland Mortgage Corp.,* No. CV–96–BU–0917–S, 1999 WL 1135127 (N.D.Ala. July 20, 1999) (Judge Buttrum); *Heimmermann v. First Union Mortgage Corp.,* 188 F.R.D. 403 (N.D.Ala.1999) (Judge Johnson); *Dujanovic v. MortgageAmerica,* 185 F.R.D. 660 (N.D.Ala.1999) (Magistrate Judge Putnum); *Wilson v. Commercial Federal Mortgage Corp.,* No.

---

and obtained reports on plaintiffs' income, tax returns, bank deposit and investment accounts; (8) obtained plaintiffs' credit reports and information concerning their bankruptcy, judgment, repossession and/or foreclosure; (9) drafted a letter explaining the repayment of the original mortgage loan on plaintiffs' property; and (10) counseled plaintiffs on how to improve credit and advised them to keep current on bills in order to improve credit so they could later refinance at a lower interest rate.

3. In connection with their loan, the following payments were made: plaintiffs paid Realty $1,083, or 1% of the loan; WMC paid Realty $1,083, or 1% of the loan, for premium yield; and plaintiffs paid a $300 appraisal fee and $45 for a credit report.

98–J–0184–S (N.D.Ala. March 21, 2000) (Report and Recommendation of Magistrate Judge Green, adopted by Judge Johnson); *Briggs v. Countrywide*, 188 F.R.D. 645, 649 n. 5 (M.D.Ala.1999); *Glover v. Standard Federal Bank & Heartland Mortgage*, No. 97–2068 (D.Minn. March 6, 2000) (Judge Frank).[4] This court, however, concurs in the reasoning of Judge Tunheim in *Levine v. North American Mortgage Corp.*, that,

> [w]hile the Policy Statement's first step is less rigorous than that suggested in *Culpepper* ..., it is consistent with the purpose and language of RESPA. By simply ensuring that the broker's total compensation is reasonably related to the goods or services the broker actually furnishes, the Policy Statement serves RESPA's primary goal of preventing kickbacks or referral fees that unnecessarily and unreasonably increase the costs of settlement services. *See* § 2607(a) and (b). Also, Congress did not include in RESPA a specific methodology for distinguishing between unlawful referral fees and unearned fees and legitimate payments for goods and services. The Policy Statement's "total compensation for goods and services" approach is a reasonable method of distinguishing between lender payments to brokers that fall within the protections of subsection (c) and those that do not.

*Levine*, 188 F.R.D. at 328–29; *see also*, *Potchin*, 1999 WL 1814612, at 8 (expressing agreement "with the well-reasoned opinion in Levine which held that HUD's interpretation of RESPA is not arbitrary or contrary to the statute. HUD's test for determining whether a yield spread premium is illegal is therefore accepted by the Court."). Moreover, as the court in *Isara*, No. 99–00310SPK, at 12, aptly observed,

> One wonders when a yield spread premium would be legal under RESPA if it is, by definition, a function of interest rates rather than the benefits the broker provides. The answer is that Plaintiff's position permits no instance in which a premium payment is legal. HUD has interpreted section 8(c) of RESPA to the contrary, and it is an interpretation that the Court will accord deference.

Based on the court's conclusion that the determinative inquiry is whether the total compensation to the broker "is reasonably related to goods, facilities, or services furnished or performed," it follows that WMC is entitled to summary judgment on plaintiffs' claim that WMC violated RESPA by paying an illegal yield spread premium to Realty inasmuch as the evidence of record establishes beyond genuine dispute that Realty performed services in connection with the loan transaction for which the total compensation it received was reasonable.[5]

4. Though of course of no consequence, it is interesting to note that seven of the eight judges (including magistrate judges) that have come to this conclusion are in districts within the Eleventh Circuit, the circuit in which *Culpepper* was decided; and one of those seven is the judge who rendered the first *Culpepper* decision which the Eleventh Circuit affirmed.

5. Plaintiffs complain that at the time they made their application and at all times prior to the closing they were told by Realty that they would pay Realty a one percent origination fee for its services and that Realty assured them it would find them the best rate available and the lowest monthly payment. They maintain that they did not know that WMC was at the same time paying Realty a fee that would increase the interest rate on the loan and increase their monthly payments. On these subjects, plaintiffs state in their response memorandum that WMC's arguments "ignore the fact that the broker agreed to accept a 1% loan origination fee as the total compensation for its services," and "ignore the fact that the McCrillises did not know about the [yield spread premium]." These alleged facts, even if supported by the record, would not detract from the conclusion that the payment of a yield spread premium by WMC to Realty did not violate RESPA. Plaintiffs' complaint makes no other allegation of wrongdoing on the part of WMC. The court would note, however, that any duty on the part of WMC to disclose the payment was evidently satisfied, given that the Good Faith Estimate provided to plaintiffs at or before closing reflected an origination fee to the broker of 6% plus a yield spread premium of 2%.

■ In addition to their allegation that WMC violated RESPA, plaintiffs also charged that the defendants violated the Mississippi Consumer Loan Broker Act, Miss.Code Ann. § 81–19–1, which limits the amount paid by a borrower to a broker for service charges to three percent of the amount of the loan. Inasmuch as the payments to Realty were under three percent, there is no basis for plaintiffs' claim in this regard.

Based on the foregoing, it is ordered that WMC's motion for summary judgment is granted.

In addition, the Itemization of Amount Financed signed by plaintiffs at closing disclosed payment of a $1083 premium to Realty by WMC outside of closing.

Further, while it appears that plaintiffs may be claiming that Realty made certain misrepresentations to them in connection with its fee or its services, that has no bearing on plaintiffs' claims against WMC, which are the only claims before the court for consideration at this time.